Part 1 of 3

MINH TUONG NGUYEN
840 Chateau Ct
Garden Grove, CA 92841
Phone: (828) 666-3388
Email: minhnguyensteven@gmail.com
Defendant, In Pro Per

**FILED**

MAY 27 2026

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re<br><br>MINH TUONG NGUYEN,<br><br><br>Debtor. | Bk Case No. 8:26-bk-10347-SC<br>Adv. No.: 8:26-ap-01027-SC<br><br>**OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| PAUL NGUYEN,<br><br>    Plaintiff,<br><br>  v.<br><br>MINH TUONG NGUYEN<br><br>  Defendant. | <br>Date: June 9, 2026<br>Time: 1:30 p.m.<br>Dept: 5C |

Defendant Minh Tuong Nguyen ("Defendant") respectfully submits this Opposition to Plaintiff Paul Nguyen's ("Plaintiff") Motion for Partial Summary Judgment or, in the Alternative, Partial Summary Adjudication ("Motion").

1

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY ADJUDICATION

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................4

II.   STATEMENT OF FACTS ......................................................................................5

    A.    The Underlying Dispute: A Co-Investment Arrangement, Not a Fraud. .........5

    B.    Defendant Retained Counsel Due to Language Barriers and Residence Abroad................6

    C.    Discovery Proceedings and Counsel's Failure to Communicate Court Orders...................6

    D.    Terminating Sanctions Proceedings and Counsel's Abandonment. .....................7

    E.    Default Judgment and Absence of Merits Adjudication...........................8

    F.    Post-Judgment Proceedings, Attorney Misconduct, and Lack of Adjudication on the Merits. ...................8

III.  LEGAL STANDARD ............................................................................................9

    A.    Summary Judgment Standard. ................................................................9

    B.    Collateral Estoppel in Nondischargeability Proceedings. .........................9

    C.    Additional Requirements Where the Prior Judgment Was Entered by Default. ...............10

    D.    Attorney Abandonment. ........................................................................11

IV.   ARGUMENT...........................................................................................................11

    A.    Collateral Estoppel Cannot Apply Because the Fraud Issues Were Neither Actually Litigated Nor Necessarily Decided..............................................11

    B.    Defendant Was Denied a Full and Fair Opportunity to Litigate Due to Attorney Abandonment....................................................................................15

    C.    The Default Judgment Contains No Express Fraud Findings Sufficient to Satisfy the "Necessarily Decided" Requirement. ...................................18

    D.    Application of Collateral Estoppel Would Contravene the Policies Underlying the Doctrine. ...................................................................................22

    E.    Plaintiff Cannot Independently Establish the Elements of § 523(a)(2)(A) on This Record. 24

V.    CONCLUSION ......................................................................................................28

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248 ................................................24, 27, 28

Anderson v. Liberty Lobby, Inc. (1986) 477 U.S. 242, 255 ..........................................................9

*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898–900 .......................................11

*Estate of Williams* (1950) 36 Cal.2d 289 ....................................................................................4

*Estate of Williams (In Re Williams's Estate)* (1950) 36 Cal.2d 289, 297 .......................10, 12, 15

*Grogan v. Garner* (1991) 498 U.S. 279, 284 fn. 11 ....................................................................9

*Grogan v. Garner* (1991) 498 U.S. 279, 287–88 .......................................................................24

*Harmon v. Kobrin (In re Harmon)* (9th Cir. 2001) 250 F.3d 1240, 1245 ....................................9

*Harmon v. Kobrin (In re Harmon)* (9th Cir. 2001) 250 F.3d 1240, 1246–1249 .................. passim

*Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)* (B.A.P. 9th Cir. 2007) 367 B.R. 99,
   107 ...................................................................................................................................23

*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 ...........................................................10, 22

*Muegler v. Bening* (9th Cir. 2005) 413 F.3d 980, 986 ...............................................................13

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)* (9th Cir. 2000) 234 F.3d
   1081, 1085 .....................................................................................................................19, 24

*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829 ...................................................10, 15

**Statutes**

11 U.S.C. § 523(a)(2)(A) .......................................................................................... passim

CCP § 585 ...................................................................................................................21

Full Faith and Credit Act, 28 U.S.C. § 1738 ...............................................................9

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY ADJUDICATION

## I.    INTRODUCTION

Plaintiff seeks to transform a California default judgment entered after terminating sanctions into a conclusive federal fraud adjudication under 11 U.S.C. § 523(a)(2)(A), thereby relieving himself of the burden to prove the elements of nondischargeability in this Court. The Motion fails because it rests on a premise rejected by controlling Ninth Circuit authority: a default judgment does not establish nondischargeable fraud through collateral estoppel unless the record demonstrates that the relevant fraud issues were actually litigated and necessarily decided, and that application of preclusion is consistent with California law governing default judgments. (*Harmon v. Kobrin (In re Harmon)* (9th Cir. 2001) 250 F.3d 1240, 1246–1249; *Estate of Williams* (1950) 36 Cal.2d 289.)

The state court record here does not satisfy those requirements. The judgment contains no express findings on any element of fraud. The terminating sanctions order addressed discovery noncompliance and willfulness in the context of procedural sanctions, not the merits of Plaintiff's fraud allegations. The subsequent prove-up judgment likewise did not identify which causes of action were sustained, what factual findings were made, or whether any damages award rested on fraud as opposed to other pleaded theories. Under *Harmon* and *Williams' Estate*, the absence of express findings is fatal unless the Court could not have entered judgment without necessarily deciding fraud—a showing Plaintiff cannot make on this record.

Nor does the procedural history support preclusion. Defendant did not forfeit participation through informed inaction or litigation misconduct. The record reflects that Defendant, residing abroad, was deprived of meaningful participation in the proceedings resulting in default due to attorney abandonment, including failures to communicate discovery orders, noticed hearings, terminating sanctions proceedings, and the prove-up process that culminated in judgment. Defendant promptly sought relief in state court upon learning of the judgment, but his motion to vacate was interrupted by the bankruptcy filing and automatic stay. On these facts, Plaintiff cannot establish the predicates for invoking collateral estoppel against a default judgment.

Even apart from preclusion, Plaintiff is not entitled to summary judgment. A creditor

4

seeking nondischargeability under § 523(a)(2)(A) bears the burden of proving each element of fraud by a preponderance of the evidence, and all reasonable inferences must be drawn in Defendant's favor at summary judgment. Plaintiff instead relies on a one-sided state court prove-up and disputed factual inferences concerning intent, reliance, causation, and Defendant's knowledge and participation—matters that cannot be resolved as a matter of law on this record.

For these reasons, and as set forth below, Plaintiff's Motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

### A.    The Underlying Dispute: A Co-Investment Arrangement, Not a Fraud.

In or about 2021, Defendant entered into investment-related co-ownership arrangements with Ngoc Tuyet Lam ("Lam") concerning two residential properties located at 10475 Teal Circle, Fountain Valley, California 92708 (the "Teal Property") and 9872 Flamingo Avenue, Fountain Valley, California 92708 (the "Flamingo Property"). (Minh Decl. ¶ 4.)

These arrangements were memorialized in written instruments executed by both parties. With respect to the Teal Property, the parties executed a written co-investment agreement. With respect to the Flamingo Property, Lam executed a notarized borrower's certificate reflecting a loan/investment obligation in the amount of $870,000. (Minh Decl. ¶ 5, Ex. A.)

Defendant did not induce Lam into these transactions through fraud or intentional deception, did not knowingly make false statements, did not conceal material facts with intent to deceive, and did not misappropriate or divert Lam's funds for personal use. (Minh Decl. ¶ 6.) Defendant understood the arrangements to be legitimate, written co-investment transactions between the parties. (*Id.*)

At no time prior to the entry of default judgment did Defendant have a meaningful opportunity to present his version of these transactions to any court. (Minh Decl. ¶ 7.)

Plaintiff Lam initiated the underlying action on April 4, 2022 in the Superior Court of California, County of Orange, Case No. 30-2022-01253059-CU-OR-NJC (the "State Court Action"), later filing a First Amended Complaint asserting thirteen causes of action, including: Breach of Fiduciary Duty, Fraudulent Misrepresentation, Fraudulent Concealment, Negligent

5

Misrepresentation, Actual Fraud, Constructive Fraud, Constructive Trust, Quiet Title, Conversion, Accounting, Money Had and Received, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress. (Minh Decl. ¶ 8; Plaintiff's Notice of Lodgment ("Lodgment"), Ex. 2.)

**B.      Defendant Retained Counsel Due to Language Barriers and Residence Abroad.**

Defendant is a recent immigrant to the United States with no working knowledge of English and cannot meaningfully read, write, or understand English-language legal documents or proceedings. (Minh Decl. ¶ 2.) During the pendency of the State Court Action, Defendant resided primarily in Vietnam and returned to the United States only intermittently due to ongoing family and personal obligations abroad. (Minh Decl. ¶ 3.)

Because of these limitations, Defendant retained attorney Alex L. Benedict, Esq. (SBN 184585), of the Law Offices of Alex L. Benedict & Associates, APLC, to represent him in the State Court Action. (Minh Decl. ¶ 9.) Defendant selected Mr. Benedict because he spoke Vietnamese and had been known and trusted by Defendant for approximately four years. (Minh Decl. ¶ 10.)

Defendant reasonably believed Mr. Benedict would communicate with him in Vietnamese, keep him informed of court proceedings, and protect his interests in California while Defendant resided abroad. (Minh Decl. ¶ 11.) Because Defendant was physically in Vietnam and unable to independently access or understand English-language filings, he was entirely dependent on counsel to relay information regarding hearings, orders, deadlines, and litigation developments. (Minh Decl. ¶¶ 12–13.)

**C.      Discovery Proceedings and Counsel's Failure to Communicate Court Orders**

During the litigation, Mr. Benedict failed to inform Defendant that discovery had been propounded, that discovery motions were pending, or that the court had issued orders compelling compliance. (Minh Decl. ¶¶ 16–17, 19–22.)

Defendant was not informed that discovery orders had been issued on or about November 20, 2024 and December 4, 2024, requiring production of financial documents and transaction records relevant to the claims. (Minh Decl. ¶¶ 19–21; Lodgment, Ex. 3.)

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY ADJUDICATION

Defendant was never advised of what documents were required, never asked to collect responsive materials, and never informed that noncompliance could expose him to terminating sanctions. (Minh Decl. ¶¶ 22–23.)

Defendant did not knowingly refuse to participate in discovery, ignore court orders, or withhold documents. (Minh Decl. ¶ 18.) He was not aware that any such obligations had been imposed. (*Id.*)

**D.    Terminating Sanctions Proceedings and Counsel's Abandonment.**

On May 5, 2025, Plaintiff moved for terminating sanctions seeking to strike Defendant's answer and enter default. (Minh Decl. ¶ 25; Lodgment, Ex. 3.) The hearing was set for May 21, 2025.

The court issued a tentative ruling indicating it intended to grant the motion but expressly provided that the motion could be denied if Defendant appeared and demonstrated that any discovery noncompliance was not willful. (Lodgment, Ex. 3, p. 2.)

Mr. Benedict did not inform Defendant of the motion, the hearing date, or the tentative ruling. (Minh Decl. ¶¶ 26–28.)

Prior to the hearing, substitute counsel appeared without meaningful ability to explain or defend the discovery record, and the court ordered Mr. Benedict personally to appear on May 7, 2025. (Lodgment, Ex. 3, p. 2.) Mr. Benedict did not appear, and another attorney appeared in his place and acknowledged discovery orders had not been complied with. (*Id.*; Minh Decl. ¶¶ 30–33.)

Defendant was not informed that his counsel had been ordered to appear, had failed to do so, or that his case was at imminent risk of terminating sanctions. (Minh Decl. ¶ 33.)

Had Defendant been informed of the May 21, 2025 hearing and the opportunity to appear, he would have done so and would have explained that any discovery deficiencies were not willful and resulted solely from lack of communication from counsel while Defendant was residing in Vietnam. (Minh Decl. ¶¶ 34–35.)

On May 21, 2025, no appearance was made on behalf of Defendant, and the court granted terminating sanctions, struck Defendant's answer, and entered default. (Lodgment, Ex. 3, pp. 1–

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION

3.)

**E.    Default Judgment and Absence of Merits Adjudication.**

On July 23, 2025, the court entered default judgment following a prove-up proceeding based solely on Plaintiff's submissions. (Minh Decl. ¶ 42; Lodgment, Ex. 5.)

The judgment awarded $1,672,952.48 in damages, $389,515.94 in prejudgment interest, and $5,482.35 in costs, totaling $2,086,793.75. (Lodgment, Ex. 5.)

The judgment contains no express findings regarding fraud elements, including misrepresentation, knowledge of falsity, intent to deceive, reliance, or causation. (Lodgment, Ex. 5.) Nor does it specify which of the thirteen causes of action formed the basis of the damages award. (*Id.*)

Defendant was not present at the prove-up proceeding, had no notice from counsel, and had no opportunity to present evidence or contest Plaintiff's declarations. (Minh Decl. ¶¶ 43–45.) Defendant's account of the transactions has never been presented to any court. (Minh Decl. ¶ 46.)

Defendant denies all allegations of fraud, intent to deceive, and misappropriation. (Minh Decl. ¶¶ 47–50.)

**F.    Post-Judgment Proceedings, Attorney Misconduct, and Lack of Adjudication on the Merits.**

After learning of the default judgment, Defendant promptly moved to set it aside under Code of Civil Procedure section 473(b), based on attorney fault and abandonment. (Minh Decl. ¶ 52, Ex. D.)

Before that motion could be heard, Defendant filed a Chapter 7 bankruptcy petition on February 4, 2026, staying the state court proceedings. (Minh Decl. ¶ 53.) As a result, the motion to vacate was taken off calendar and has never been adjudicated. (Minh Decl. ¶¶ 54–55.)

Defendant has since learned that Mr. Benedict has been charged with numerous felony fraud offenses arising from conduct occurring during the same period he represented Defendant. (Minh Decl. ¶ 56; Ex. E.) Defendant has also filed a complaint with the California State Bar regarding counsel's conduct. (Minh Decl. ¶ 57, Ex. F.)

8

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION

At all times relevant, Defendant was residing in Vietnam, unable to independently monitor the litigation, and wholly reliant on counsel for communication and case management. (Minh Decl. ¶¶ 2–3, 12–13.)

The result was a default judgment entered without Defendant ever receiving a meaningful opportunity to participate in discovery, respond to dispositive motions, or present his defenses. (Minh Decl. ¶¶ 45–46.)

## III.    LEGAL STANDARD

### A.    Summary Judgment Standard.

Summary judgment is proper only where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. (Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056.) The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to any material fact, and all reasonable inferences must be drawn in favor of the non-moving party. (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 255.) A genuine dispute exists whenever a reasonable jury could return a verdict for the non-moving party. (*Id.* at 248.)

### B.    Collateral Estoppel in Nondischargeability Proceedings.

Collateral estoppel principles apply in proceedings seeking exceptions to discharge under 11 U.S.C. § 523(a). (*Harmon v. Kobrin* (*In re Harmon*) (9th Cir. 2001) 250 F.3d 1240, 1245, citing *Grogan v. Garner* (1991) 498 U.S. 279, 284 fn. 11.) Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in bankruptcy is governed by the preclusion law of the state issuing the judgment. (*Harmon*, supra, 250 F.3d at p. 1245.)

Under California law, collateral estoppel applies only where the party asserting preclusion establishes five threshold requirements: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Harmon*, supra, 250 F.3d at p. 1245, quoting *Lucido*

9

*v. Superior Court* (1990) 51 Cal.3d 335, 341.)

The party asserting collateral estoppel bears the burden of establishing these requirements. (*Harmon*, supra, 250 F.3d at p. 1245.) Even where the threshold elements are met, collateral estoppel applies only where consistent with the doctrine's underlying public policies. (*Id.*)

**C. <u>Additional Requirements Where the Prior Judgment Was Entered by Default.</u>**

A California default judgment may have preclusive effect in a subsequent § 523 proceeding only where the creditor establishes that the issue sought to be precluded was "actually litigated" and "necessarily decided" in the prior action. (*Harmon,* supra, 250 F.3d at pp. 1246–49; *Estate of Williams (In Re Williams's Estate)* (1950) 36 Cal.2d 289, 297.) Under *Williams' Estate*, as interpreted by *Harmon*, the default judgment context imposes additional limitations beyond the standard *Lucido* requirements. (*Harmon*, supra, 250 F.3d at pp. 1246–48.)

First, an issue in a default judgment has preclusive effect only where "the record shows an express finding upon the allegation" for which preclusion is sought; a court's silence concerning a pleaded allegation does not constitute adjudication. (*In re Williams' Estate*, supra, 36 Cal.2d at p. 254; *Harmon*, supra, 250 F.3d at p. 1247.) As the Ninth Circuit held, "because there was no express finding in respect to fraud (or anything else for that matter), we cannot conclude that the state court considered and decided the issue." (*Harmon*, supra, 250 F.3d at p. 1248.) The absence of an express finding may be excused only where the issue was necessarily decided—i.e., where the court could not have entered judgment without resolving the specific issue for which preclusion is sought. (*Id.* at pp. 1247–48.)

Second, *Williams' Estate* imposes a notice requirement that makes a full and fair opportunity to litigate part of the threshold collateral estoppel inquiry in the default judgment context, rather than merely a public policy consideration. (*Harmon*, supra, 250 F.3d at p. 1246, fn. 5; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829.) The rationale for binding a defaulting defendant to the allegations of a complaint—that the defendant is "presumed to admit all the facts which are well pleaded"—is "inapplicable in cases in which the defendant is unaware of the litigation." (*In re Williams' Estate*, supra, 36 Cal.2d at p. 297.) Thus, "it would be

10

unreasonable" to give preclusive effect to a default judgment where the defendant lacked meaningful notice or knowledge of the proceedings resulting in default. (*Id.*) Accordingly, a defendant may be precluded only where the defendant "has been personally served with summons or has actual knowledge of the existence of the litigation." (*Id.* at p. 299; *Harmon, supra*, 250 F.3d at p. 1247.)

### D. Attorney Abandonment.

California law distinguishes ordinary attorney negligence from attorney abandonment or "positive misconduct." While ordinary attorney negligence generally is imputed to the client, attorney misconduct may become "so extreme as to amount to positive misconduct," thereby severing the attorney-client relationship and rendering the client effectively unrepresented. (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898–900.)

Where counsel's misconduct effectively "obliterates the existence of the attorney-client relationship," the client is not chargeable with counsel's failures in the same manner as ordinary attorney neglect. (*Id.* at p. 898.)

## IV.    ARGUMENT

### A.  Collateral Estoppel Cannot Apply Because the Fraud Issues Were Neither Actually Litigated Nor Necessarily Decided.

Plaintiff's entire motion rests on a single premise: that the Orange County Superior Court's default judgment conclusively established that Defendant committed fraud, such that this Court need not conduct an independent nondischargeability inquiry. That premise is wrong as a matter of law, and the Ninth Circuit has said so directly in circumstances materially identical to those presented here.

#### 1.    The Controlling Standard: *In re Harmon* and *In re Williams' Estate.*

The Ninth Circuit's decision in *In re Harmon* is controlling and dispositive. In *Harmon*, the creditor obtained a state court default judgment following protracted litigation, then sought to use that judgment as collateral estoppel to establish fraud in a subsequent § 523(a)(2)(A) nondischargeability proceeding — precisely what Plaintiff seeks to do here. The Ninth Circuit reversed the bankruptcy court's grant of summary judgment, holding that the fraud issue was

11

neither "actually litigated" nor "necessarily decided" in the state court proceeding, and therefore could not be given preclusive effect. (*Harmon,* supra, 250 F.3d at pp. 1248–49.)

The *Harmon* court grounded its analysis in *In re Williams' Estate*, the foundational California Supreme Court decision governing collateral estoppel in the default judgment context. While *Williams' Estate* established that a default judgment is "an estoppel as to all issues necessarily litigated therein and determined thereby exactly like any other judgment," it imposed two critical limitations on this principle that are directly applicable here. (*Harmon*, supra, 250 F.3d at p. 1247, quoting *In re Williams' Estate* (1950) 36 Cal.2d 289, 297.) As this section demonstrates, neither the "actually litigated" requirement nor its alternative — the "necessarily decided" requirement addressed in Section C below — is satisfied on this record.

**2.      The "Actually Litigated" Requirement Demands More Than a Well-Pleaded Complaint.**

Under *Harmon*, an issue is "actually litigated" only when it is "properly raised by a party's pleadings or otherwise, when it is submitted to the court for determination, and when the court actually determines the issue." (*Harmon*, supra, 250 F.3d at p. 1247.) The mere fact that fraud was pleaded in the First Amended Complaint does not establish that fraud was actually litigated. *Harmon* itself involved a complaint that "adequately alleged facts that would satisfy the five elements under § 523(a)(2)(A)," and the Ninth Circuit still held that the "actually litigated" requirement was not met. (*Id.* at 1246.) The question is not whether fraud was alleged — it is whether the fraud issues were "submitted to the court for determination" and "actually determine[d] by the court." (*Id.* at 1247.) As the Ninth Circuit concluded in *Harmon*: "because there was no express finding in respect to fraud (or anything else for that matter), we cannot conclude that the state court considered and decided the issue." (*Id.* at 1248.) The same conclusion compels the same result here.

The prove-up proceeding that preceded the July 23, 2025 default judgment was entirely one-sided. Lam submitted a written declaration and 129 pages of exhibits. No opposition was filed. No competing evidence was presented. Defendant's version of the underlying transactions has never been submitted to any court. The fraud issues were not "submitted to the court for

12

determination" in any meaningful sense — they were presented by one side only, with no challenge, no testing, and no judicial resolution of a genuine dispute. Under *Harmon*'s standard, that is not "actually litigated."

### 3.  The Terminating Sanctions Proceeding Was a Discovery Inquiry, Not a Fraud Adjudication.

Plaintiff further relies on the May 21, 2025 terminating sanctions ruling as evidence that the fraud issues were actually litigated. That reliance fundamentally mischaracterizes what that proceeding was. The May 21, 2025 Minute Order confirms that the court's inquiry was directed entirely to one question: whether Defendants had willfully failed to comply with the court's November 20, 2024 and December 4, 2024 discovery orders. (Lodgment, Ex. 3 [Minute Order, 05/21/2025, p. 2].) The court found that the failure to comply "can be described as nothing less than 'willful,'" and on that basis struck Defendants' answer and entered default. (*Id.*) That is a finding about discovery misconduct. It is not a finding about misrepresentation, scienter, intent to deceive, justifiable reliance, or any other fraud element. A finding of willful discovery noncompliance is not a finding of fraud and cannot be bootstrapped into one for collateral estoppel purposes. The fraud issues were never "submitted to the court for determination" in the terminating sanctions proceeding and were never "actually determine[d]" by it. (*Harmon, supra,* 250 F.3d at p. 1247.)

### 4.  Muegler Does Not Save Plaintiff's Position.

Plaintiff relies on *Muegler v. Bening* for the proposition that a judgment entered after terminating discovery sanctions retains preclusive effect because "the relevant procedural opportunities are those available at the beginning of the case, not those lost due to the Defendant's abuse of the discovery process." (*Muegler v. Bening* (9th Cir. 2005) 413 F.3d 980, 986.) *Muegler* is distinguishable on a critical fact: in *Muegler*, the debtor personally and knowingly engaged in the discovery abuse that led to the terminating sanction. The loss of procedural opportunities was the direct consequence of the debtor's own willful misconduct.

Here, by contrast, the discovery failures were not Defendant's failures at all. Defendant was residing in Vietnam, had no knowledge that discovery orders had been entered, was never

13

informed by Benedict that compliance was required, and was never told that his answer was at risk of being struck. (Minh Decl. ¶¶ 16–41) The state court's willfulness finding was made in the complete absence of any input from Defendant, because Benedict never informed Defendant that the terminating sanctions hearing was scheduled or that his personal appearance could have prevented the entry of default. (Lodgment, Ex. 3 [Minute Order, 05/21/2025, p. 2–3]; Nguyen Decl. ¶ 16.) *Muegler*'s rationale — that a debtor who personally abuses the discovery process forfeits the right to contest the resulting judgment's preclusive effect — has no application where the debtor was never informed that discovery proceedings were occurring. To extend *Muegler* to these facts would impute Benedict's abandonment to Defendant for collateral estoppel purposes, punishing Defendant for his attorney's failures rather than his own. That is not what *Muegler* holds, and it is not what the law permits.

As demonstrated in Section C below, even setting aside the absence of any meaningful litigation process, Plaintiff's collateral estoppel argument fails for an independent reason: the default judgment contains no express findings on any fraud element, and the fraud issues were not necessarily decided by the judgment.

### 5.    Functional Inference Cannot Substitute for Express Adjudication Under *Harmon* and *Williams' Estate*.

Even where a complaint pleads fraud and a court enters a default judgment after a prove-up hearing, collateral estoppel does not arise from inferred or functional findings. Under Harmon and Williams' Estate, preclusion in the default judgment context requires either (1) an express adjudication of the specific issue, or (2) a determination that the issue was necessarily decided in the strict sense that the judgment could not have been entered without resolving that issue. (*Harmon*, supra, 250 F.3d at pp. 1247–1248.) A court's post hoc ability to infer that fraud "must have been found" from the existence of a fraud pleading, a damages award, or a prove-up declaration is insufficient as a matter of law. The inquiry is not whether fraud could be reconstructed from the record, but whether the state court actually decided each element of fraud. Where, as here, the judgment does not identify the cause of action on which relief is granted and contains no findings on misrepresentation, scienter, intent, reliance, or causation, collateral

14

estoppel cannot attach regardless of the content of the pleadings or the detail of the prove-up submissions.

## B. Defendant Was Denied a Full and Fair Opportunity to Litigate Due to Attorney Abandonment.

Even if this Court were to find that the fraud issues were technically raised in the state court proceedings, collateral estoppel still cannot apply because Defendant was denied a full and fair opportunity to litigate those issues. That denial was not the result of Defendant's own choices or conduct — it was the direct and proximate result of his attorney's abandonment of him at every critical juncture of the litigation.

### 1. The Full and Fair Opportunity Requirement Is a Threshold Condition in the Default Judgment Context.

Under California law, the presence or absence of a full and fair opportunity to litigate is relevant both to the threshold collateral estoppel inquiry and to the public policy inquiry that must be satisfied before preclusion can be applied. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829.) In the default judgment context specifically, *Williams' Estate*'s notice requirement elevates the full and fair opportunity showing to a threshold condition, not merely a public policy consideration. (*Harmon,* supra, 250 F.3d at p. 1246 & fn. 5.)

The rationale for binding a defaulting defendant to the allegations of a complaint — that the defendant is "presumed to admit all the facts which are well pleaded in the complaint" — breaks down where the defendant lacked meaningful knowledge of the critical proceedings leading to judgment. As *Harmon* explains, quoting *Williams' Estate* directly: "Where there is a complete lack of knowledge on the part of a defendant of the action, it would be unreasonable to hold that the judgment becomes, in effect, a contract between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief." (*Harmon,* supra, 250 F.3d at p. 1247, quoting *In re Williams' Estate,* supra, 36 Cal.2d at p. 297.) Accordingly, *Williams' Estate* held, and *Harmon* confirmed, that a defendant may be precluded from relitigating issues resulting in a default judgment only where the defendant "has been personally served with summons or has actual knowledge of the

15

existence of the litigation." (*Harmon, supra,*250 F.3d at p. 1247, quoting *In re Williams' Estate,* supra, 36 Cal.2d at p. 299.)

While Defendant had knowledge of the existence of the lawsuit, he had no knowledge of the critical proceedings — the discovery orders, the terminating sanctions hearing, the tentative ruling giving him a final opportunity to appear, or the prove-up — that culminated in the judgment. For collateral estoppel purposes, the practical effect is the same: Defendant was denied the opportunity to contest the very issues Plaintiff now seeks to treat as conclusively established.

### 2.    What Occurred Here Was Abandonment, Not Negligence.

California law draws a sharp and legally significant distinction between attorney negligence and attorney abandonment. While ordinary negligence is generally imputed to the client, attorney abandonment — where counsel's complete failure to act deprives the client of any meaningful opportunity to participate in the proceeding — is treated differently and negates the full and fair opportunity requirement that collateral estoppel presupposes. (*Carroll,* supra, 32 Cal.3d at pp. 898–900.)

What occurred here was not negligence. It was abandonment in its most complete form. Benedict, as Defendant's attorney of record, repeatedly failed to respond to discovery, failed to oppose Lam's discovery motions, failed to appear at noticed hearings, and failed to oppose the terminating sanctions briefing — all without informing Defendant that any of this was occurring. (Minh Decl. ¶¶ 16–41.) When the state court issued two orders compelling discovery compliance in November and December 2024, Benedict did not tell Defendant the orders had been entered or that compliance was required. (*Id.*) When Lam filed her motion for terminating sanctions, Benedict did not tell Defendant the motion had been filed. (*Id.*) When the court issued a tentative ruling that it would grant the motion unless Defendant personally appeared to contest the willfulness finding, Benedict did not tell Defendant that his appearance could have prevented the default. (*Id.*) And when the prove-up proceeding was scheduled that would result in a judgment of over two million dollars against Defendant, Benedict did not tell Defendant that either. (*Id.*) Defendant, residing in Vietnam with no access to English-language court records and no

16

independent means of monitoring the proceedings, had no way of discovering any of this on his own. (*Id.* ¶ 12.)

### 3. The Minute Order Confirms Complete Dysfunction at the Critical Moment.

The May 21, 2025 Minute Order documents the state of Defendant's representation in detail, and it is a portrait of complete dysfunction. At the May 6 ex parte hearing, Ryan Jackman appeared for Benedict but was "unable to explain" the discovery violations to the court. (Lodgment, Ex. 3 [Minute Order, 05/21/2025, p. 2].) The court then issued a direct personal order requiring Benedict himself to appear the following day. (*Id.*) Benedict defied that order and did not appear. In his place, John Hamilton appeared on May 7, likewise "had no adequate explanation, and conceded that in fact the Court's discovery orders had in fact been ignored." (*Id.*) The court was presented with information that Benedict had suffered a "car accident" and "brain injuries," yet Hamilton simultaneously assured the court that "Mr. Benedict would be representing the defendants in the rapidly approaching jury trial." (*Id.*)

When the May 21 hearing commenced, there was "no appearance on behalf of defendants." (Lodgment, Ex. 3 [Minute Order, 05/21/2025, p. 1].) Defendant, residing in Vietnam, had no knowledge that any of this was happening and no opportunity to appear and contest the willfulness finding that the tentative ruling expressly invited him to contest. (Minh Decl. ¶¶ 16–41.) Had Defendant been informed that his personal appearance at the May 21 hearing could have prevented the entry of default, he would have appeared. (*Id.* ¶¶ 34–35.)

### 4. Benedict's Criminal Indictment Confirms That This Was Abandonment, Not Negligence.

The full picture of Benedict's conduct during this period has since come into focus. Benedict has been charged by the Orange County District Attorney with ninety-six felony fraud counts alleged to have been committed during the same period he was purportedly representing Defendant. (Minh Decl. ¶ 56, Ex. E.) An attorney simultaneously committing nearly one hundred acts of fraud while ostensibly representing a client is not merely negligent — he is incapable of fulfilling his professional obligations and has effectively abandoned every client whose matter he is neglecting in the process.

17

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION

Plaintiff cannot credibly argue that Defendant had a full and fair opportunity to litigate when his attorney of record was under criminal investigation for fraud, was defying direct court orders to appear, was sending substitutes who knew nothing about the case, and was concealing all of this from a client residing in Vietnam who had no independent means of discovering that his case was collapsing. The full and fair opportunity requirement exists precisely to prevent this result — to ensure that collateral estoppel binds parties to adjudications they actually had the chance to contest, not to judgments entered against them while their attorney was functionally absent.

### 5. Defendant's Prompt Action Upon Learning of the Default Confirms the Involuntary Nature of His Non-Participation.

Defendant's conduct upon learning of the default confirms that his non-participation in the state court proceedings was not voluntary or strategic. Upon learning of the judgment, Defendant promptly filed a Motion to Set Aside and Vacate the Default Judgment under California Code of Civil Procedure section 473(b), based on the affidavit of fault and attorney abandonment of Benedict. (Minh Decl. ¶ 52, Ex. D.) That motion was pending and unresolved when the automatic bankruptcy stay intervened and took it off calendar. The state court has therefore never evaluated Defendant's abandonment claim on the merits. A debtor who moves promptly to vacate a default judgment on grounds of attorney abandonment — and whose motion is stayed before it can be heard — is the antithesis of a party who had a full and fair opportunity to litigate and chose not to avail himself of it.

Plaintiff asks this Court to treat the consequences of Benedict's abandonment as the functional equivalent of a fully contested fraud adjudication. *Harmon*, *Williams' Estate*, *Vandenberg*, and *Carroll* all preclude that result. The full and fair opportunity requirement is not a technicality — it is the foundation upon which the entire doctrine of collateral estoppel rests. Where that foundation is absent, as it plainly is here, preclusion cannot stand.

### C. The Default Judgment Contains No Express Fraud Findings Sufficient to Satisfy the "Necessarily Decided" Requirement.

Even if this Court were to find that the fraud issues were actually litigated — which

18

Defendant submits they were not for the reasons set forth in Sections A and B above —

Plaintiff's collateral estoppel argument fails for an independent and equally dispositive reason:

the state court default judgment contains no express findings on any element of fraud, and the

fraud issues were not necessarily decided by the judgment. Under *Harmon* and *Williams' Estate*,

either an express finding or a necessarily decided determination is required. Neither is present

here.

### 1. The Express Finding Requirement Is Not Satisfied.

*Williams' Estate* established, and *Harmon* confirmed, that in the default judgment context

a pleaded allegation does not become an adjudicated fact merely because default was entered. As

*Harmon* explains, quoting *Williams' Estate* directly, preclusive effect in the default judgment

context attaches only where "the record shows an express finding upon the allegation" for which

preclusion is sought. (*Harmon*, supra, 250 F.3d at p. 1247, quoting *In re Williams' Estate*, supra,

36 Cal.2d at p. 254.) Further, "a court's silence concerning a pleaded allegation does not

constitute adjudication of the issue." (*Harmon*, supra, 250 F.3d at p. 1247.) As the Ninth Circuit

concluded: "because there was no express finding in respect to fraud (or anything else for that

matter), we cannot conclude that the state court considered and decided the issue." (*Id.* at 1248.)

To prevail under § 523(a)(2)(A), a creditor must establish five elements: (1)

misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of

falsity; (3) intent to deceive; (4) justifiable reliance by the creditor; and (5) damage proximately

caused by that reliance. (*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)* (9th

Cir. 2000) 234 F.3d 1081, 1085.) For collateral estoppel to establish any of these elements, the

state court must have actually found that the element was satisfied. The record here contains no

such findings.

The May 21, 2025 Minute Order — on which Plaintiff most heavily relies — contains no

findings on any fraud element. (Lodgment, Ex. 3 [Minute Order, 05/21/2025].) The court's ruling

addressed one question only: whether Defendants had willfully failed to comply with the court's

discovery orders. (*Id.* at p. 2.) That finding goes to discovery misconduct — not to

misrepresentation, scienter, intent to deceive, justifiable reliance, or causation of damages

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY ADJUDICATION

through fraud. Under *Harmon*, "a court's silence concerning a pleaded allegation does not constitute adjudication of the issue," and a finding of willful discovery noncompliance cannot be bootstrapped into a finding of fraud for collateral estoppel purposes. (*Harmon*, supra, 250 F.3d at p. 1247.)

The July 23, 2025 default judgment is equally silent on every fraud element. (Lodgment, Ex. 5 [Judgment, 07/23/2025].) It awards damages and quiets title to the Flamingo Property without identifying which of the thirteen causes of action were sustained, without finding that Defendant made any misrepresentation, without finding that Defendant acted with knowledge of falsity or intent to deceive, without finding that Lam's reliance was justifiable, and without finding that her damages were proximately caused by fraudulent conduct as opposed to breach of contract, breach of fiduciary duty, conversion, or any of the other theories pleaded. Under *Harmon*, that silence is not adjudication of the fraud elements and cannot support the collateral estoppel Plaintiff seeks.

Accordingly, even a detailed prove-up declaration cannot cure the absence of adjudicated findings on the elements required under § 523(a)(2)(A). The governing inquiry is not whether the record could support an inference of fraud, but whether the state court actually made determinations on each required element. (*Harmon*, supra, 250 F.3d at pp. 1247–1248.) California law does not permit collateral estoppel to rest on reconstructed or implied findings in the default judgment context.

**2.    The Fraud Issues Were Not Necessarily Decided.**

The express finding requirement may be satisfied without an explicit finding if the fraud issue was necessarily decided — that is, if the state court could not have entered judgment without resolving fraud as an essential element of the relief granted. (*Harmon*, supra, 250 F.3d at p. 1248.) That condition is not met here for two independent reasons.

First, as *Harmon* instructs, "the state court could have entered a default judgment against [the Defendant] without finding that he had committed fraud." (*Id.* at 1248.) A finding that damages are supported by the complaint is not equivalent to a finding that each element of fraud under 11 U.S.C. § 523(a)(2)(A) has been adjudicated.

20

Here, the First Amended Complaint pleaded thirteen causes of action, of which fraud was only one component. Breach of fiduciary duty, negligent misrepresentation, constructive fraud, conversion, money had and received, and accounting — all pleaded in the complaint — do not require proof of knowledge of falsity and intent to deceive, the elements most critical to nondischargeability under § 523(a)(2)(A). Because the judgment does not identify which causes of action it sustains, this Court cannot determine that the damages necessarily flowed from a finding of actual fraud rather than from one or more of the non-fraud theories pleaded.

Second, an issue is "actually litigated" — and therefore necessarily decided — only when it is "properly raised by a party's pleadings or otherwise, when it is submitted to the court for determination, and when the court actually determines the issue." (*Id.* at 1247.) A prove-up declaration submitted in the complete absence of the opposing party, who was in Vietnam and had no knowledge the proceeding was occurring, was not "submitted to the court for determination" in any sense that satisfies *Harmon*'s standard, and the fraud issues were therefore not "actually determine[d]" by the court. (*Id.*)

### 3.    Plaintiff's Arguments for Necessarily Decided Status Are Unavailing.

Plaintiff argues that the combination of a fraud-specific complaint, a detailed prove-up declaration, and a CCP § 585(b) court judgment — as opposed to a bare clerk's default under CCP § 585(a) — establishes that the fraud issues were necessarily decided. This argument fails.

The distinction between a § 585(a) clerk's default and a § 585(b) court judgment, while real, does not carry the weight Plaintiff assigns it. Judicial review of a one-sided evidentiary submission is not the same as judicial determination of a contested issue. *Harmon* itself involved a court judgment — not a bare clerk's default — and the Ninth Circuit still held that the fraud issues were neither actually litigated nor necessarily decided. The level of judicial involvement in the prove-up does not cure the fundamental absence of any express finding on the fraud elements, nor does it establish that fraud — rather than some other theory — was the necessary basis for the damages awarded.

Plaintiff further argues that the fraud-specific pleading of the First Amended Complaint establishes that the fraud issues were necessarily before the court and necessarily resolved by the

judgment. *Harmon* squarely rejected this argument. The *Harmon* court expressly noted that the state court complaint "adequately alleged facts that would satisfy the five elements under § 523(a)(2)(A)" — and still held that neither the "actually litigated" nor the "necessarily decided" requirement was satisfied. (*Harmon,* supra, 250 F.3d at p. 1246.) The adequacy of the pleading is not the question. The question, as *Harmon* frames it, is whether the fraud issues were "submitted to the court for determination" and "actually determine[d] by the court." (*Id.* at 1247.) On this record, they were not.

### 4.    This Case is Controlled by *In re Harmon*, Not Distinguished From It.

The core holding of *Harmon* is simple and categorical: "The issue of whether Harmon committed fraud against Kobrin within the meaning of 11 U.S.C. § 523(a)(2)(A) was neither 'necessarily decided' by nor 'actually litigated' in the state court proceeding." (*Harmon,* supra, 250 F.3d at p. 1249.) The same conclusion applies here with equal — indeed, greater — force. The state court default judgment in *Lam v. Nguyen* was entered on a one-sided evidentiary submission, following a terminating sanction imposed for discovery misconduct, against a defendant who was in Vietnam and had no knowledge that any of the critical proceedings were occurring. The judgment is silent on every fraud element. It does not identify which causes of action it sustains. It reflects no determination of the fraud issues. Under *Harmon*, that judgment cannot preclude Defendant from contesting the fraud allegations in this adversary proceeding.

Defendant is entitled to his day in court — the day that Benedict's abandonment denied him in the state court action, and that *Harmon* and *Williams' Estate* guarantee him here.

### D. Application of Collateral Estoppel Would Contravene the Policies Underlying the Doctrine.

Even where the technical elements of collateral estoppel are arguably satisfied, California law requires courts to determine whether applying preclusion would advance the doctrine's underlying public policies. *Lucido* instructs that collateral estoppel applies only where consistent with the preservation of the integrity of the judicial system, promotion of judicial economy, and protection against vexatious litigation. (*Lucido*, supra, 51 Cal.3d at pp. 342–343.) The Ninth Circuit Bankruptcy Appellate Panel has likewise recognized that California's public policy

inquiry remains a necessary limitation on the application of issue preclusion in dischargeability proceedings and cautions against applying collateral estoppel mechanically merely because technical requirements are asserted to exist. (*Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)* (B.A.P. 9th Cir. 2007) 367 B.R. 99, 107.)

Application of collateral estoppel here would undermine, rather than advance, those policies. First, it would not protect the integrity of the judicial system to treat a default judgment entered following attorney abandonment and terminating sanctions as the functional equivalent of an adjudication on the merits of fraud. The state court never expressly determined the elements of fraud, never identified which causes of action supported the judgment, and never made findings establishing the requirements of 11 U.S.C. § 523(a)(2)(A). To give conclusive effect to such a judgment would elevate procedural collapse over adjudicative reliability.

Second, applying collateral estoppel here would not promote judicial economy. The central dispute in this adversary proceeding—whether Debtor committed actionable fraud within the meaning of § 523(a)(2)(A)—has never actually been adjudicated. Refusing preclusion would not require relitigation of a previously resolved issue; it would require litigation of an issue that has yet to be resolved. As *Harmon* recognized, bankruptcy courts retain the obligation to determine whether the elements of nondischargeability were in fact established, rather than assuming they were decided in a prior default proceeding where the record does not demonstrate that result. (*Harmon*, supra, 250 F.3d at pp. 1246–1249.)

Third, the doctrine's purpose of preventing repetitive litigation is not implicated. Debtor does not seek to relitigate an issue previously decided against him after adversarial testing; he seeks his first meaningful opportunity to contest allegations of fraud that were never expressly adjudicated and were reduced to judgment only after counsel ceased functioning as an advocate. Applying collateral estoppel in these circumstances would transform a procedural default into an irrebuttable finding of fraud without the adjudicative safeguards California preclusion law requires.

Finally, applying collateral estoppel here would distort the careful limits California law imposes on default judgments. As *Harmon* and *Williams' Estate* make clear, default judgments

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION

warrant heightened scrutiny precisely because the issues are not resolved through adversarial litigation. Extending preclusive effect to a sanctions-based default judgment devoid of fraud findings, entered after attorney abandonment and without meaningful participation by Debtor, would expand collateral estoppel beyond its intended function and undermine confidence in the fairness and accuracy of judicial outcomes. Under *Lucido* and *Lopez*, the doctrine's public policies weigh decisively against preclusion here.

**E. Plaintiff Cannot Independently Establish the Elements of § 523(a)(2)(A) on This Record.**

Even if this Court were to find that collateral estoppel does not resolve this proceeding — which Defendant submits it does not, for the reasons set forth in Sections A through D above — Plaintiff's Motion still fails because Plaintiff cannot independently establish the elements of § 523(a)(2)(A) on this record. He relies entirely on the state court record — a record created without Defendant's participation, never tested through adversarial proceedings, and now directly disputed by Defendant's declaration. That is not a record that supports summary judgment.

**1.    The Legal Standard for Independent Establishment of § 523(a)(2)(A).**

To prevail under § 523(a)(2)(A), a creditor must establish five elements by a preponderance of the evidence: (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor; and (5) damage to the creditor proximately caused by that reliance. (*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)* (9th Cir. 2000) 234 F.3d 1081, 1085.) The creditor bears the burden of proving each of these elements. (*Grogan v. Garner* (1991) 498 U.S. 279, 287–88.) On a motion for summary judgment, the moving party must demonstrate that there is no genuine dispute as to any material fact with respect to each element. (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248.) All reasonable inferences must be drawn in favor of the nonmoving party. (Id. at p. 255.)

Where, as here, the nonmoving party comes forward with a declaration disputing the underlying facts, summary judgment is inappropriate. A nonmoving party need only demonstrate that a reasonable trier of fact could return a verdict in its favor — and where the debtor's

24

declaration directly contradicts the factual account on which the creditor relies, that threshold is met. (*Id.* at p. 248.) Plaintiff's reliance on Lam's one-sided prove-up declaration — submitted without opposition in proceedings from which Defendant was entirely absent — cannot discharge Plaintiff's burden of demonstrating the absence of a genuine dispute of material fact when Defendant now comes forward with a directly competing account.

### 2.   Plaintiff Has No Independent Evidentiary Basis for This Motion.

Plaintiff is the assignee of the judgment debt. He did not transact with Defendant, was not a party to the state court action, and has no personal knowledge of the underlying events. (Lodgment, Ex. 6 [Acknowledgment of Assignment of Judgment].) The entirety of Plaintiff's evidentiary showing consists of documents from the state court record: the First Amended Complaint, the Minute Order, the prove-up declaration of Lam, and the judgment. Plaintiff has submitted no declaration of his own attesting to any fact relevant to the § 523(a)(2)(A) elements.

The prove-up declaration of Lam, on which Plaintiff relies most heavily, was submitted in an uncontested proceeding in which Defendant was absent, unrepresented, and unaware that the proceeding was occurring. (Minh Decl. ¶¶ 43–46.) It has never been tested through cross-examination, discovery, or any adversarial process. It represents one party's account of disputed transactions, submitted without challenge. On a motion for summary judgment in an adversary proceeding where Defendant now appears and disputes the underlying facts, a one-sided prove-up declaration does not establish the absence of a genuine dispute of material fact. It establishes only that one side has told its story — and that the other side has never had the opportunity to tell its own.

### 3.   Defendant Disputes the Factual Predicate for Each Element.

Defendant's declaration directly disputes the factual account on which Plaintiff relies for each element of § 523(a)(2)(A), creating genuine disputes of material fact that preclude summary judgment.

**Misrepresentation and Concealment.** Plaintiff contends that Defendant falsely represented that the Teal and Flamingo property transactions would be all-cash purchases, that Lam's funds would be deposited into escrow, and that title would be held as represented.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY ADJUDICATION

Defendant denies that he made any false representations. (Minh Decl. ¶¶ 47–50.) The transactions were undertaken pursuant to written instruments signed by both parties memorializing the terms of their agreement. (*Id.* ¶ 5, Ex. A.) The characterization of those transactions as fraudulent misrepresentation reflects only Lam's account — an account that has never been tested against Defendant's competing version of events. (*Id.* ¶ 46.) That factual dispute is genuine and material, and it alone precludes summary judgment on the misrepresentation element.

**Knowledge of Falsity and Intent to Deceive.** Plaintiff contends that Defendant knew his representations were false and acted with intent to deceive. These are among the most fact-intensive elements of any fraud claim, turning entirely on Defendant's state of mind at the time of the transactions. Defendant denies that he acted with knowledge of falsity or with any intent to deceive Lam. (Minh Decl. ¶¶ 6, 47–50.) He entered into these transactions as co-investment arrangements pursuant to written agreements, with no intent to defraud anyone. (*Id.* ¶ 5–6, Ex. A.) Scienter and intent to deceive are quintessentially factual questions that cannot be resolved on summary judgment where the defendant comes forward with a declaration denying those mental states. (*In re Slyman, supra,* 234 F.3d at p. 1085.) Plaintiff's only evidence of scienter is Lam's own prove-up declaration — a one-sided account that has never been subject to adversarial testing. That is not sufficient to establish the absence of a genuine dispute on elements as fact-intensive as knowledge of falsity and intent to deceive.

**Justifiable Reliance.** Plaintiff contends that Lam justifiably relied on Defendant's alleged representations. Defendant disputes that Lam's reliance, to the extent she relied on anything, was induced by fraudulent misrepresentation rather than by the terms of the written agreements the parties executed. (Minh Decl. ¶¶ 5–6, Ex. A.) The existence of written instruments memorializing the parties' arrangements raises genuine questions about the nature and basis of Lam's reliance that cannot be resolved on this record without adversarial examination of those documents and the circumstances surrounding the transactions.

**Proximate Causation and Damages.** Plaintiff contends that Lam's damages of $2,086,793.75 were proximately caused by Defendant's fraudulent conduct. Defendant disputes

26

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION

that Lam suffered any damages or that any damages Lam may have suffered were caused by fraud, rather than by the ordinary risks and outcomes of a co-investment arrangement that both parties entered into pursuant to written agreements. (Minh Decl. ¶¶ 5–6, Ex. A.) The damages figure in the judgment reflects a one-sided presentation to the state court in the complete absence of Defendant. It has never been tested against Defendant's account of the transactions, the terms of the written agreements, or any evidence that Defendant might have presented had he been given the opportunity to appear. (Minh Decl. ¶¶ 42–46.)

### 4. Plaintiff's Reliance on Lam's Prove-Up Declaration Cannot Establish the Absence of a Genuine Dispute.

Plaintiff's motion effectively asks this Court to treat Lam's uncontested prove-up declaration as conclusive proof of each element of § 523(a)(2)(A) on a motion for summary judgment in an adversary proceeding where Defendant now appears and disputes those elements. That is not the summary judgment standard. Under *Anderson v. Liberty Lobby*, the court must determine whether a reasonable trier of fact could return a verdict for the nonmoving party — and where the nonmoving party's declaration directly contradicts the moving party's evidentiary showing, that standard is satisfied. (*Anderson*, supra, 477 U.S. at p. 248.)

Lam's prove-up declaration was submitted in proceedings from which Defendant was entirely absent due to attorney abandonment. It was never cross-examined, never tested against documentary evidence that Defendant might have produced, and never evaluated in light of Defendant's competing account of the transactions. To give that declaration summary judgment effect in an adversary proceeding where Defendant now appears and disputes its contents would be to reward the attorney abandonment that kept Defendant out of the state court proceedings in the first place — and to deny Defendant the adversarial hearing that *Harmon* and *Williams' Estate* confirm he is entitled to receive. (*Harmon*, supra, 250 F.3d at p. 1249.)

### 5. At Minimum, Genuine Disputes of Material Fact Preclude Summary Judgment.

Even if this Court were to conclude that Plaintiff has made a threshold showing on some elements of § 523(a)(2)(A) — which Defendant disputes — Defendant's declaration creates

27

genuine disputes of material fact on every element that preclude summary judgment. The existence of written co-investment agreements, Defendant's denial of any fraudulent intent, and Defendant's competing account of the transactions are not conclusory denials — they are specific factual assertions that, if credited by a trier of fact, would defeat Plaintiff's nondischargeability claim entirely. (*Anderson,* supra, 477 U.S. at p. 248 ["[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"].)

Summary judgment is a drastic remedy that permanently forecloses a party's right to present its case to a trier of fact. In a nondischargeability proceeding where the debtor has never had the opportunity to be heard on the merits — where the entire adverse record was created in his absence due to attorney abandonment — the case for denying summary judgment and permitting a full evidentiary hearing is overwhelming. Defendant asks only for the opportunity to present his side of the story to this Court. That is the minimum that the summary judgment standard, the purposes of collateral estoppel, and basic fairness require.

## V.    CONCLUSION

For the foregoing reasons, Defendant Minh Tuong Nguyen respectfully requests that this Court deny Plaintiff's Motion for Partial Summary Judgment in its entirety. The state court default judgment on which Plaintiff relies was entered in Defendant's absence, without his knowledge, while his attorney was committing nearly one hundred counts of fraud as charged by the Orange County District Attorney. The fraud issues were neither actually litigated nor necessarily decided in the state court proceedings. Defendant was denied a full and fair opportunity to litigate due to attorney abandonment. The default judgment contains no express findings on any fraud element. The public policies underlying collateral estoppel weigh against its application. And Plaintiff cannot independently establish the elements of § 523(a)(2)(A) on a record that consists entirely of one-sided, untested evidence created in Defendant's absence.

The Ninth Circuit's decision in *In re Harmon* is directly on point and compels denial of this motion. Defendant respectfully requests that this Court set this matter for a full evidentiary hearing at which Defendant will have the opportunity — for the first time — to present his defense to the fraud allegations that have been asserted against him.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION

Dated: May 26, 2026

Respectfully submitted,

_____

Minh Tuong Nguyen, Defendant in Pro Per

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY ADJUDICATION

MINH TUONG NGUYEN
840 Chateau Ct
Garden Grove, CA 92841
Phone: (828) 666-3388
Email: minhnguyensteven@gmail.com

Defendant, In Pro Per

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re<br><br>MINH TUONG NGUYEN,<br><br>Debtor. | Bk Case No. 8:26-bk-10347-SC<br><br>Adv. No.: 8:26-ap-01027-SC<br><br>**DECLARATION OF MINH TUONG NGUYEN IN SUPPORT OF OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION** |
| PAUL NGUYEN,<br><br>Plaintiff,<br><br>v.<br><br>MINH TUONG NGUYEN<br><br>Defendant. | Date: June 9, 2026<br>Time: 1:30 p.m.<br>Dept: 5C |

## DECLARATION OF MINH TUONG NGUYEN

I, Minh Tuong Nguyen, declare as follows:

1.      I am the Defendant and Debtor in the above-captioned adversary proceeding. I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto.

2.      I am a recent immigrant to the United States and do not have a working knowledge of the English language. I cannot meaningfully read, write, or understand English-language legal documents, court filings, or legal proceedings conducted in English.

1

3. During the pendency of the state court action described below, I resided primarily in Vietnam and returned to the United States only intermittently. I maintained personal and family ties in Vietnam that required my presence there for extended periods of time.

4. In or about 2021, I entered into investment-related arrangements with Ngoc Tuyet Lam ("Lam") concerning two residential properties located at 10475 Teal Circle, Fountain Valley, California 92708 (the "Teal Property") and 9872 Flamingo Avenue, Fountain Valley, California 92708 (the "Flamingo Property").

5. The arrangements concerning these properties were documented in written instruments signed by Lam and me. With respect to the Teal Property, Lam and I signed a written co-investment agreement. With respect to the Flamingo Property, Lam signed a notarized borrower's certificate in the amount of $870,000 relating to that transaction. Attached hereto collectively as Exhibit A are true and correct copies of the written instruments relating to the Teal Property and Flamingo Property.

6. I did not induce Lam to enter these transactions through fraud or intentional deception. I did not knowingly make false representations to Lam, conceal material facts from her with intent to deceive, or divert her funds for my own improper personal use. I understood the transactions to be legitimate arrangements documented in writing between the parties.

7. Before the events described below, I had never been given an opportunity to present my understanding of these transactions to any court.

8. On or about April 4, 2022, Lam filed a complaint against me in the Superior Court of California, County of Orange, entitled *Ngoc Tuyet Lam v. Minh Tuong Nguyen*, Case No. 30-2022-01253059-CU-OR-NJC (the "State Court Action"), later filing a First Amended Complaint asserting thirteen causes of action, including: Breach of Fiduciary Duty, Fraudulent Misrepresentation, Fraudulent Concealment, Negligent Misrepresentation, Actual Fraud, Constructive Fraud, Constructive Trust, Quiet Title, Conversion, Accounting, Money Had and Received, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress.

9. Because I resided primarily in Vietnam and could not meaningfully communicate

2

DECLARATION OF MINH TUONG NGUYEN

in English or understand English-language legal proceedings, I retained attorney Alex L. Benedict, Esq. (California State Bar No. 184585) of the Law Offices of Alex L. Benedict & Associates, APLC, to represent me in the State Court Action.

10.     I specifically retained Mr. Benedict because he spoke Vietnamese and because I had known and trusted him for approximately four years before retaining him.

11.     I believed Mr. Benedict would communicate with me in Vietnamese, explain the proceedings to me, advise me if my participation was required, and appear in court to protect my interests while I resided abroad.

12.     Because I was living primarily in Vietnam and could not understand English-language court filings or independently monitor Orange County Superior Court proceedings, I depended on Mr. Benedict to keep me informed regarding hearings, court orders, deadlines, and matters requiring my participation or response.

13.     I trusted Mr. Benedict to advise me if action on my part became necessary.

14.     During the State Court Action, Mr. Benedict did not tell me that he had assigned or delegated portions of my matter to other attorneys, including Ryan E. Jackman, Esq. and John Hamilton, Esq.

15.     I was not informed who was handling my case at any given time, how responsibilities had been divided, or whom I should contact concerning developments in the litigation.

16.     While the State Court Action was pending, Mr. Benedict did not inform me that discovery requests had been served, that court orders concerning discovery had been issued, that hearings concerning discovery disputes had been scheduled, or that my case was at risk of sanctions or default.

17.     During the litigation, I was unaware that there were alleged failures to respond to discovery, failures to oppose motions, failures to appear at hearings, or proceedings that could place my answer at risk.

18.     I did not knowingly refuse to participate in discovery, intentionally disregard court orders, or knowingly decline to assist in responding to information requests. I was not

3

informed that information or documents were being requested from me.

19.     After retaining new counsel and obtaining court records, I learned for the first time that the state court had issued discovery-related orders on or about November 20, 2024 and December 4, 2024.

20.     From those records, I learned that the court had ordered compliance concerning discovery requests involving financial information and transactions relevant to Lam's claims.

21.     Before reviewing those records with new counsel, I had not been told by Mr. Benedict that the court had issued those orders, that compliance was required, or that any failure to comply could result in serious consequences.

22.     Mr. Benedict did not explain what documents or information were being requested or tell me that my assistance was needed to gather responsive materials.

23.     Had I been informed that discovery responses were required or that court orders directed compliance, I would have cooperated in providing documents, information, and assistance requested by counsel.

24.     Until I later retained new counsel and reviewed the state court records, I did not understand that the litigation had progressed to the point where my answer was at risk of being stricken.

25.     After reviewing court records with new counsel, I learned for the first time that on or about May 5, 2025, Lam filed a motion for terminating sanctions seeking to strike my answer and enter my default, with a hearing set for May 21, 2025 before the Honorable Scott A. Steiner in Department N18 of the Orange County Superior Court.

26.     Benedict never informed me that the motion had been filed or that the hearing had been scheduled.

27.     I later learned from the May 21, 2025 Minute Order that the court issued a tentative ruling stating that it intended to grant terminating sanctions unless I appeared and demonstrated that the discovery failures were not willful. Attached hereto as Exhibit B is a true and correct copy of the May 21, 2025 terminating sanctions Minute Order.

28.     Benedict never informed me of the tentative ruling, the hearing, or the fact that

my participation or appearance could affect whether my answer would be stricken and default entered.

29. At all relevant times, I was residing in Vietnam and had no practical way to independently monitor Orange County court proceedings, access English-language filings, or learn of hearings without being informed by counsel.

30. I further learned from the court records that, at an ex parte proceeding on May 6, 2025, attorney Ryan E. Jackman appeared in Benedict's place and was unable to adequately explain the discovery failures to the court.

31. I further learned that the court ordered Benedict personally to appear on May 7, 2025, but Benedict did not appear.

32. I further learned that attorney John Hamilton appeared instead and conceded that the court's discovery orders had not been complied with.

33. I was not informed that Benedict had stopped personally handling my matter, that substitute attorneys were appearing, that Benedict had failed to appear after being ordered to do so, or that my case was at risk of terminating sanctions.

34. Had I been informed of the May 21, 2025 hearing, the tentative ruling, or the fact that my participation could affect the court's determination regarding willfulness, I would have appeared remotely or otherwise participated and explained that any discovery failures were not the result of my intentional refusal to cooperate.

35. I would have informed the court that I did not know discovery had been requested, did not know compliance orders had been entered, and was relying entirely on Benedict to advise me regarding anything requiring my participation.

36. After the May 21, 2025 ruling, Benedict sent me a text message in attaching a ruling from the court.

37. Benedict did not explain that my answer had been stricken, my default entered, or that a prove-up proceeding would occur.

38. Instead, Benedict told me words to the effect that I had "lost" because Lam had not informed her attorney regarding a settlement and that I had been sanctioned as a result.

5

DECLARATION OF PHU TRUONG NGUYEN

Attached hereto as Exhibit C is a true and correct copy of the text message in Vietnamese, together with a certified English translation.

39. I later learned that Benedict's explanation was false and materially misleading.

40. I was unaware that my answer had been stricken, that a default had been entered, or that a default prove-up proceeding would occur.

41. Because of Benedict's explanation, I did not understand the severity of what had happened or the need to immediately retain replacement counsel.

42. On or about July 23, 2025, the state court entered a default judgment against me following a prove-up proceeding.

43. I was not present at the prove-up proceeding.

44. I had not been informed that the prove-up proceeding had been scheduled.

45. I had no opportunity to submit evidence, contest Lam's submissions, present witnesses, explain the underlying transactions, or otherwise present my side of the dispute.

46. My version of the transactions involving the Teal Property and Flamingo Property has never been presented to any court.

47. I deny making fraudulent misrepresentations to Lam.

48. I deny acting with intent to deceive Lam.

49. I deny diverting Lam's money for personal use or engaging in embezzlement.

50. The transactions at issue were legitimate investment arrangements undertaken pursuant to written agreements and understandings between us.

51. After learning what had occurred and retaining new counsel, I acted promptly.

52. On or about December 19, 2025, I filed a motion in the State Court Action seeking to set aside and vacate the default judgment under California Code of Civil Procedure section 473(b) based on attorney fault and abandonment. Attached hereto as Exhibit D is a true and correct copy of my motion to set aside and vacate the default judgment.

53. Before the state court ruled on that motion, I filed my Chapter 7 bankruptcy case on or about February 4, 2026.

54. Following notice of the bankruptcy filing, proceedings in state court were stayed

6

DECLARATION OF MINH THONG NGUYEN

and my motion to vacate was taken off calendar.

55.     The state court has therefore never ruled on whether the default judgment resulted from attorney abandonment or whether relief should be granted under section 473(b).

56.     After retaining new counsel, I learned that Benedict had been charged by the Orange County District Attorney with numerous felony fraud offenses allegedly committed during the same period he was representing me. Attached hereto as Exhibit E is a true and correct copy of publicly available California State Bar information and Orange County Superior Court criminal case docket concerning Benedict.

57.     On or about March 6, 2026, I filed a complaint against Benedict with the California State Bar concerning his conduct in my case. Attached hereto as Exhibit F is a true and correct copy of my State Bar complaint.

58.     Before the bankruptcy stay intervened, my motion to vacate was fully briefed and pending before the Orange County Superior Court.

59.     Concurrently with my Opposition, I seek limited relief from stay solely to permit the Orange County Superior Court to rule on the already-pending motion to vacate.

60.     I do not seek stay relief to relitigate the merits of the underlying dispute or pursue affirmative relief against Lam.

61.     I seek only a determination of whether the default judgment should be vacated based on the circumstances described above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 26, 2026, at Garden Grove, California.

Minh Tuong Nguyen

7

DECLARATION OF MINH TUONG NGUYEN

# EXHIBIT A

# Agreement

**California, at the office of J.D. Escrow, Inc. (16509 Brookhurst St., Fountain Valley, CA 92708), on February 2ⁿᵈ, 2022.**

My name is Nguyen Minh Tuong (Minh Tuong Nguyen, Passport# C6486015). I am currently a co-owner of the property addressed 10475 Teal Cir., Fountain Valley, CA 92708 with Ms. Tran Thuy Nga. In the past, I had invested with Ms. Tuyet Ngoc Lam (Lam Ngoc Tuyet) to buy this property. Later, Ms. Tuyet Ngoc Lam withdrew her investments and transferred it to Ms. Tran Thuy Nga. However, there are some issues with this property's business transactions. Hence, I agree to take all responsibilities regarding this property based on my past agreement between Ms. Tuyet Ngoc Lam and I.

Ms. Tran Thuy Nga and I will take care of the issues regarding to the property mentioned above. And if there are any complaints in front of the court, I will take all responsibilities myself without involving Ms. Tuyet Ngoc Lam and her investments.

1.  I agree that within three days after I finish selling the property addressed 10042 Rangeview Dr., North Tustin, Santa Ana, CA 92705 (Close of Escrow), I will pay Ms. Tuyet Ngoc Lam the total amount of **$650,000.00**, which was Ms. Tuyet Ngoc Lam's investment amount on the property addressed 10475 Teal Cir., Fountain Valley, CA 92708.

    This agreement will be honored for the rest of my business career. With responsibility as a trusted person of Ms. Tuyet Ngoc Lam, I will never let Ms. Tuyet Ngoc Lam take any losses on her investment of **$650,000.00** on the property addressed 10475 Teal Cir., Fountain Valley, CA 92708.

2.  I am texting this message with my official U.S phone number +1 (951) 456-6666, because I always respect Ms. Tuyet Ngoc Lam and her husband.

3.  The general rule of business is that if two parties invest together, and there is a loss, both parties must take the loss and responsibility. However, based on my honor and integrity, I will take all losses and responsibilities for Ms. Tuyet Ngoc Lam and never let her take any of the losses because her investments are her asset and wealth. And if there are any profits, I will share them with Ms. Tuyet Ngoc Lam. I always respect and protect my business partner, Ms. Tuyet Ngoc Lam.

# Giấy Cam Kết

**California , Tại Văn phòng J D Escrow , Inc. ( 16509 Brookhurst street , Fountain Valley , CA , 92708 ) , ngày 07 tháng 02 năm 2022**

Tôi, Nguyễn Tường Minh ( Minh Tường Nguyễn, Số Passport C6486015 ) hiện là đồng chủ sở hữu căn nhà 10475 Teal Cir, Fountain Valley, CA 92708 cùng với Trần Thúy Nga. Trước đây, tôi có hợp tác đầu tư cùng bà Tuyết Ngọc Lâm ( Lâm Ngọc Tuyết) để mua căn nhà này. Sau này, bà Tuyết Ngọc Lâm có rút cổ phần, chuyển lại cho bà Trần Thúy Nga. Tuy nhiên, theo thống nhất giữa tôi và bà Tuyết Ngọc Lâm, do quá trình kinh doanh căn nhà này gặp trục trặc, tôi cam kết tự chịu trách nhiệm toàn bộ những khó khăn và vướng mắc phát sinh từ căn nhà này.

Tôi và bà Trần Thúy Nga sẽ tự xử lý và có khiếu nại ra tòa án thì tôi sẽ tự chịu trách nhiệm chứ không liên đới với khoản đầu tư của bà Tuyết Ngọc Lâm.

1/ Cá nhân tôi cam kết sau khi tôi bán xong Căn nhà 10042 Rangeview Dr, North Tustin , Santa Ana, CA, Zip code 92705 ( đóng esrow ) thì tôi sẽ hoàn trả lại ngay đầy đủ số tiền 650.000 usd ( trong vòng 03 ngày kể từ đóng escrow căn nhà 10042 Rangeview Dr ) mà bà Tuyết đã đầu tư vào căn đường Teal nói trên.

Đây là cam kết danh dự trong suốt cuộc đời kinh doanh của tôi, với trách nhiệm là người được bà Tuyết gửi gắm niềm tin, tôi không để Bà Tuyết Ngọc Lâm thiệt hại bất cứ đồng tiền nào trong số tiền 650.000 usd đã đầu tư vào căn 10475 Teal Cir, Fountain Valley, CA 92708.

2/ Tôi nhắn tin nhắn này bằng số điện thoại chính thức 01-951-456-6666 của tôi đang sử dụng tại nước Mỹ, vì tôi luôn quý trọng nhân cách bà Tuyết Ngọc Lâm và Chồng.

3/ Nguyên tắc kinh doanh, nếu cùng đầu tư gặp thua lỗ thì 2 cổ đông cùng chịu, nhưng cá nhân tôi khẳng định Danh dự của mình rằng, nếu thua lỗ tôi gánh, nếu lợi nhuận tôi chia. Tôi không để cổ đông Tuyết Ngọc Lâm lỗ đồng nào vì đó là tài sản cơ nghiệp của Bà. Tôi cực kỳ tôn trọng và muốn bảo vệ đối tác của mình.

Ký Tên

_____  Minh          _____          _____ ( Người làm chứng )

Nguyễn Tường          Lâm Ngọc Tuyết

# CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of ___ORANGE___ )

On ___02/07/2022___ before me, ___QUAN MINH PHAM, A NOTARY PUBLIC___
(here insert name and title of the officer)

personally appeared ___NGUYEN TUONG MINH and LAM NGOC TUYET___
_____ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> QUAN MINH PHAM
> COMM. #2304763
> Notary Public - California
> Orange County
> My Comm. Expires Sep. 12, 2023

(Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

### Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of ___Giấy Cam Kết___

containing ___01___ pages, and dated ___02/07/2022___

The signer(s) capacity or authority is/are as:

- ☒ Individual(s)
- ☐ Attorney-in-Fact
- ☐ Corporate Officer(s) _____
                              Title(s)

- ☐ Guardian/Conservator
- ☐ Partner - Limited/General
- ☐ Trustee(s)
- ☐ Other: _____

representing: _____
Name(s) of Person(s) or Entity(ies) Signer is Representing

### Additional Information

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
- ○ form(s) of Identification   ○ credible witness(es)

Notarial event is detailed in notary journal on:
Page # _____   Entry # _____

Notary contact: _____

Other
- ☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)
- ☐

© Copyright 2007-2018 Notary Rotary, PO Box 41400, Des Moines, IA 50311-0502. All Rights Reserved.   Item Number 101772   Please contact your Authorized Reseller to purchase copies of this form.

DocuSign Envelope ID: 63B2C88C-ACE8-4C85-A0F9-2B79D5ABB86A



**COAST CITIES
ESCROW**
You need it right. Now.

12501 Seal Beach Blvd., Suite 225, Seal Beach, CA 90740
Tel: (562) 596-6030• Fax: (562) 596-6075

| | | |
|---|---|---|
| To: | **Coast Cities Escrow** | Date: November 17, 2021 |
| Attention: | **Tiffany Taylor, Escrow Officer** | Escrow No. **21-12827-TT** |
| Property: | **9872 Flamingo Avenue, Fountain Valley, CA 92708** | |

## AMENDED ESCROW INSTRUCTIONS

My instructions in the above numbered escrow are hereby modified – supplemented in the following particulars only.

**ADDITIONAL BUYER:**
Ngoc Tuyet Lam agrees to become a Vestee in the above-numbered escrow, and acknowledges that he/she/they has/have received, read, approve(s), and agree(s) to be bound by the original Residential Purchase Agreement and Joint Escrow Instructions dated  , Addendums and Counter Offers thereto, original Supplemental Escrow Instructions dated October 29, 2021 and all amendments thereto; and will hand you all documents and funds necessary to close this escrow.

Seller(s) and original Buyer(s) hereby approve of this addition of Ngoc Tuyet Lam as a Buyer herein.

Escrow Holder is authorized and instructed to correct vesting on grant deed previously executed by Seller to reflect the Buyers' vesting as stated below. All parties are aware that all funds currently on deposit in the amount of $45,000.00 shall now be for the credit of all Buyers.

**BUYER VESTING** is hereby amended to be as follows: To Be Determined

Buyer and Seller agree to indemnify, defend and hold Escrow Holder, its employees and officers of the corporation, and real estate agents and brokers harmless from any liability or loss sustained in connection with this instruction, including attorneys' fees which may be incurred to uphold this indemnity.

All other terms and conditions of this escrow shall remain the same. All parties signing this instruction acknowledge receipt of a copy of same.

### END OF AMENDMENT

**SELLER :**

Deirdre Jayne Bence and Herman John Kuhlendahl,
Co-Trustees of the Trust Of Lillian M. Kuhlendahl
Dated June 1, 1999

By: Deirdre Jayne Bence, Co-Trustee          By: Herman John Kuhlendahl, Co-Trustee

**BUYERS:**

Tuong Minh Nguyen          Ngan Thi Kim Tran

Ngoc Tuyet Lam

DocuSign Envelope ID: 63B2C88C-ACE8-4C8B-A0F9-2B79D5A8B86A



**COAST CITIES
ESCROW**
You need it right. Now.

12501 Seal Beach Blvd., Suite 225, Seal Beach, CA 90740
Tel: (562) 596-6030• Fax: (562) 596-6075

| | | |
|---|---|---|
| **To:** | **Coast Cities Escrow** | Date: November 15, 2021 |
| Attention: | **Tiffany Taylor, Escrow Officer** | Escrow No. 21-12827-TT |
| Property: | **9872 Flamingo Avenue, Fountain Valley, CA 92708** | |

## AMENDED ESCROW INSTRUCTIONS

My instructions in the above numbered escrow are hereby modified – supplemented in the following particulars only.

**ADDITIONAL BUYER:**
Ngan Thi Kim Tran agrees to become a vestee in the above-numbered escrow, and acknowledges that he/she/they has/have received, read, approve(s), and agree(s) to be bound by the original Residential Purchase Agreement and Joint Escrow Instructions dated October 27, 2021, Addendums and Counter Offers thereto, original Supplemental Escrow Instructions dated October 29, 2021 and all amendments thereto; and will hand you all documents and funds necessary to close this escrow.

Seller(s) and original Buyer(s) hereby approve of this addition of Ngan Thi Kim Tran as a Buyer herein.

Escrow Holder is authorized and instructed to correct vesting on grant deed previously executed by Seller to reflect the Buyers' vesting as stated below. All parties are aware that all funds currently on deposit in the amount of $45,000.00 shall now be for the credit of all Buyers.

BUYER VESTING is hereby amended to be as follows:
Tuong Minh Nguyen, an Unmarried Man and Ngan Thi Kim Tran, a Single Woman, as Joint Tenants

Buyer and Seller agree to indemnify, defend and hold Escrow Holder, its employees and officers of the corporation, and real estate agents and brokers harmless from any liability or loss sustained in connection with this instruction, including attorneys' fees which may be incurred to uphold this indemnity.

All other terms and conditions of this escrow shall remain the same. All parties signing this instruction acknowledge receipt of a copy of same.

### END OF AMENDMENT

**SELLER :**

Deirdre Jayne Bence and Herman John Kuhlendahl,
Co-Trustees of the Trust Of Lillian M. Kuhlendahl
Dated June 1, 1999

*Deirdre Jayne Bence, co trustee*

By: Deirdre Jayne Bence, Co-Trustee

*Herman John Kuhlendahl, co trustee*

By: Herman John Kuhlendahl, Co-Trustee

**BUYERS:**

Tuong Minh Nguyen

Ngan Thi Kim Tran

DocuSign Envelope ID: 63B2C88C-ACE8-4C8B-A0F9-2B79B5AB886A

**CALIFORNIA ASSOCIATION OF REALTORS®**

# ASSIGNMENT OF AGREEMENT ADDENDUM
### (For Use As An Addendum To A Purchase Agreement)
**(C.A.R. Form AOAA, 11/14)**

The following terms and conditions are hereby incorporated in and made a part of the: ☐ California Residential Purchase Agreement, ☒ other *RPA, counter offers, all disclosures to date, escrow instructions* ("Agreement"),

dated *RPA dated 12/27/21*, on property known as *9872 Flamingo Ave*
*Fountain Valley, CA  92708-6608* ("Property"),
between *Tuong Minh Nguyen* ("Buyer")
and *Trust of Lillian M Kuhlendahl* ("Seller"):

In consideration, of the covenants contained herein, Buyer hereby assigns to assignee and assignee accepts the assignment, subject to Seller's consent, of all or a partial interest of Buyer's right, title, and interest under the Agreement, including without limitation, the right, title, and interest in any down payment or earnest money upon the following terms and conditions:

1. ☒ **(a) Partial Assignment (Adding a buyer):** Buyer is adding the Assignee(s) named below to the Agreement and granting to such Assignee(s) a partial interest in the Agreement.
   ☐ **(b) Total Assignment (New Buyer or Deleting a Buyer):** Buyer is assigning all of Buyer's interest in the Agreement to the new or remaining Buyers (Assignee(s)) named below.
   **(c) Assignee(s) Names:** *Ngan Thi Kim Tran and  Ngoc Tuyet Lam*                                                    .

2. (a) Assignee acknowledges that Buyer has already provided Assignee all of the transaction documents previously approved by Buyer including, but not limited to, all contract documents, inspection reports, pamphlets, advisories, disclosures ("Prior Documents").
   (b) Assignee, within 3 (or ___ ) Days After Seller Delivers to Assignee a Signed copy of this Assignment of Agreement Addendum ("Assignment") shall initial, Sign and Deliver to Seller all Prior Documents (or, ☐ initialed Signed copies of all Prior Documents are attached to this Assignment).
   (c) If Assignee does not Deliver to Seller all Prior Documents within the time specified in 2(b), Seller may withdraw consent to the Assignment and the Assignment shall have no further force and effect.

3. Assignee represents for the benefit of Seller that Assignee ratifies and approves as Assignee's own acts all prior approvals and acts of Buyer pursuant to the Agreement up to and including the date of this Assignment.

4. Assignee assumes and agrees to perform and observe all of the obligations and covenants of Buyer in the Agreement to be performed after the date of this Assignment.

5. Buyer acknowledges and agrees that, notwithstanding Seller's agreement to this Assignment, Buyer is not released from any obligations or covenants under the Agreement.

6. Other terms: _____

7. Seller has been advised that Buyer ☐ has ☐ has not received monetary consideration from Assignee for this Assignment.

8. Without releasing Buyer from any obligations or covenants under the Agreement and preserving all rights and remedies under the Agreement, in consideration of the covenants contained herein, Seller consents to the foregoing Assignment.

9. The parties acknowledge and agree that they have been advised to review this Assignment with their own attorney and/or accountant prior to signing this Assignment. The Brokers and agents make no representation as to the propriety, adequacy, legality or tax consequences of this Assignment.

**By signing below, Buyer, Assignee, and Seller acknowledge that each has read, understands, received a copy of and agrees to the terms of this Assignment of Agreement Addendum.**

| | |
|---|---|
| **Buyer** *Tuong Minh Nguyen* —44E05873A15349F... | **Date** 11/17/2021 |
| **Buyer** | **Date** |

☐ One or more assignees will sign by a representative. Attached is a Representative Capacity Signature Disclosure.

| | |
|---|---|
| **Assignee** *Ngan Thi Kim Tran* —R1F5R4F6A99543F.. | **Date** 11/17/2021 |
| **Assignee** *Ngoc Tuyet Lam* —7D95A15F57DF466... | **Date** 11/18/2021 |
| **Seller** *Trust of Lillian M Kuhlendahl* — *Herman John kuhlendahl, co trustee* —B419C113527D467.. | **Date** 11/18/2021 |
| **Seller** — *Deirdre Jayne Brince, co trustee* —FEF8F6DDB4924EC... | **Date** |

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**AOAA 11/14 (PAGE 1 OF 1)**

**ASSIGNMENT OF AGREEMENT ADDENDUM (AOAA PAGE 1 OF 1)**

## BORROWER'S CERTIFICATE

This Borrower's Certificate (the "*Certificate*") is made to be effective December 1, 2021 (the "*Effective Date*"), by Ngoc Tuyet Lam, a single woman, ("*Borrower*"), in favor of Bench Equity, L.L.C., an Arizona limited liability company ("*Lender*").

RECITALS:

A.      Lender is making a loan (the "*Loan*") to Borrower in the principal amount of $870,000.00to be evidenced by a Promissory Note (the "*Note*") and secured by, among other things:

(1) a Deed of Trust With Absolute Assignment Of Leases And Rents, Security Agreement And Fixture Filing (the "*Deed of Trust*"), executed by Borrower, as Trustor, and in favor of Lender, as Beneficiary, encumbering certain real property located in Orange County, California, which is more particularly described in Exhibit A attached hereto and by reference incorporated herein, together with all improvements now or hereafter located thereon and other property all as more fully described in the Deed of Trust.

B.      As a condition precedent to making the Loan, Lender has required and Borrower has agreed to make this Certificate. Borrower intends that Lender shall rely on the presentations, warranties and certifications in this Certificate in making the Loan.

REPRESENTATIONS, WARRANTIES AND COVENANTS:

1.      Representations and Warranties. Borrower hereby represents, warrants and certifies to Lender as follows:

1.1      Organization and Standing. Borrower is a  duly organized, validly existing and in good standing under the laws of the State of  and is duly registered with and permitted to do business in the State of California.

1.2      Authority. Borrower has the authority to enter into the Loan transaction and to enter into the Loan Documents (as defined below); and Ngoc Tuyet Lam, as the person signing on behalf of Borrower, has full power and authority to act on behalf of and bind Borrower and to execute the following: (a) the Note; (b) the Deed of Trust; (c) this Certificate; and (d) all other documents required by Lender to be executed by Borrower in connection with the Loan, together with any renewal or renewals thereof, any additional security therefor, or any substituted security therefor. The documents referred to in (a) through (d) above are hereafter referred to collectively as the "Loan Documents."

1.3      Organizational Documents. Borrower has delivered to Lender true and correct copies of (i) Borrower's formation documents filed with the California Secretary of State on the date of  as file number  and (ii) if Borrower is organized in a state other than

1

California, Borrower's registration and certificate of status on file with the , dated and filed on as file number , which documents as identified in clauses (i) and (ii) preceding are in full force and effect and have not been amended or modified. Borrower has also delivered true, complete and correct copies of its operating agreement, or other governance documents , dated  and the following amendments thereto, dated as hereinafter listed (collectively, "Borrower's Governance Documents"): . Borrower's Governance Documents are in full force and effect, and have not been modified or amended, except as set forth above in this Section 1.3.

1.4     Enforceability. All of the Loan Documents have been duly executed and delivered to Lender by Borrower. The Loan Documents are legal, valid and binding documents, enforceable against Borrower in accordance with their respective terms.

1.5     No Consents. Neither the execution nor the performance of the Note, the Deed of Trust or any of the other Loan Documents by Borrower requires the consent or approval of any other party or will result in any breach or contravention of or default under any covenant, warranty or agreement in any mortgage, deed of trust, lease, indenture, loan agreement, instrument, agreement, law, statute or regulation to which Borrower is a party or by which Borrower may be bound or affected. The execution of the Deed of Trust does not require the consent or approval of any other party nor will it result in any breach or contravention of or default under any covenant, warranty or agreement in any mortgage, deed of trust, lease, indenture, loan agreement, instrument, agreement, law, statute or regulation to which Borrower is a party or by which Borrower may be bound or affected.

1.6     Compliance. To the best of Borrower's knowledge, after due inquiry and investigation, the Property is in compliance with all applicable laws, statutes, regulations, ordinances, requirements, covenants, conditions and restrictions relating to the present use or occupancy of the Property. The Property consists of separate legal parcels.

1.7     Improvements. To the best of Borrower's knowledge, after due inquiry and investigation, any buildings and improvements located on the Property have been completed, are of good quality and workmanship and are free of any material defect, except as disclosed on Schedule 1.7 attached hereto and incorporated herein.

1.8     Public Improvements. To the best of Borrower's knowledge, after due inquiry and investigation, there are no intended public improvements that will or could result in any charges being assessed against the Property that will result in a lien upon the Property.

1.9     Condemnation. To the best of Borrower's knowledge, after due inquiry and investigation, there is no impending or contemplated condemnation or taking by inverse condemnation of the Property, or any portion thereof, by any governmental authorities. Borrower has not entered into any agreement to transfer the Property, or any portion thereof, in lieu of a condemnation.

1.10    No Suits. There are no lawsuits, complaints or counterclaims pending or threatened against Borrower or the Property that would have an adverse effect on the business or financial condition of the Property.

2

1.11.   Agreements. Borrower has not entered into and there is not existing any other agreement, written or oral under which Borrower is or could become obligated to transfer the Property, or any portion thereof, to a third party.

1.12   Property Information. To the best of Borrower's knowledge, after due inquiry and investigation, all documents and information delivered by Borrower to Lender with respect to the Property are true, accurate and correct in all material respects.

1.13   Leases. Borrower has not entered into any lease, operating agreement, license, development agreement, option agreement or other agreement affecting the Property, except as disclosed on Schedule 1.13 attached hereto and incorporated herein..

1.14   Bankruptcy Proceedings. Borrower has not: (a) made a general assignment for the benefit of creditors; (b) filed any voluntary petition in bankruptcy, or received notice of the filing of any involuntary petition in bankruptcy against it; (c) received a notice of the appointment of a receiver to take possession of all or substantially all of any of its assets; (d) within 12 months preceding the date of this Agreement, admitted in writing its inability to pay its debts as they come due; or (e) made an offer of settlement, extension or composition to its creditors generally.

1.15   No Defenses. Upon the funding of the Loan, the amount of the outstanding principal balance due on the Note will be $870,000.00 and Borrower has no claims, defenses or offsets against payment of the same.

1.16   Brokerage. Borrower has not agreed to pay and is not obligated to pay a commission to any person or entity in connection with the Loan. If any person or entity shall assert a claim to a fee or commission on account of the alleged employment by or agreement with Borrower, Borrower shall and does hereby indemnify Lender, and agrees to hold Lender harmless from, any such claim or any action or proceeding brought on such claim, including, without limitation, attorneys' and witness fees and court costs incurred by Lender in defending against such claim.

1.17   Full Disclosure. Borrower has not omitted to disclose to Lender any information necessary to make the Loan submission of Borrower complete and not misleading, including, without limitation, information regarding: (a) the Loan transaction; (b) the Property; and (c) the financial condition of Borrower. All information given by Borrower to Lender is true and correct. There has been no adverse material change, financial or otherwise, in the condition of Borrower or in any feature of the Property from that disclosed to Lender in any data heretofore submitted to Lender.

1.18   Specially Designated Nationals and Blocked Persons List. Neither Borrower nor any member of Borrower (a) is listed on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, Department of the Treasury ("OFAC") pursuant to Executive Order number 13224, 66 Federal Register 49079 (September 25, 2001) (the "Order"); (b) is listed on any other list of terrorists or terrorist organizations maintained pursuant to the Order, the rules and regulations of the OFAC or any

3

other applicable requirements contained in any enabling legislation or other executive orders in respect of the Order (the Order and such other rules, regulations, legislation or orders are, collectively, the "*Orders*"); (c) is engaged in activities prohibited in the Orders; and (d) has been convicted, pleaded nolo contendere, indicted, arraigned or custodially detained on charges involving money laundering or predicate crimes to money laundering.

### 1.19    Special Purpose Entity.

1.19.1 Borrower has not entered into and will not enter into any transaction with an Affiliate without the prior written consent of Lender nor shall Borrower, if such consent is granted, enter into such a transaction upon terms and conditions that are not intrinsically fair and substantially similar to those that would be available on an arms-length basis with a non-affiliated third party. For the purposes of this Section 1.19, "*Affiliate*" shall mean any person or entity that directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with Borrower or any member of Borrower.

1.19.2 Borrower has not made and will not make any loans or advances to any person or entity, and has not acquired and shall not acquire obligations or securities of any Affiliate of Borrower.

1.19.3 Borrower is and intends to remain solvent and Borrower has at all times during its existence paid and will continue to pay Borrower's debts, liabilities and expenses (including, as applicable, shared personnel and overhead expenses) only from Borrower's assets as the same shall become due.

1.19.4 Borrower has done or caused to be done and will do all things necessary to observe its good standing and existence as a Corporation and all other organizational formalities and preserve Borrower's existence, and Borrower will not, nor will Borrower permit, any member of Borrower to amend, modify or otherwise change the articles of organization, operating agreement or other organizational documents or Borrower or any member without the prior written consent of Lender.

1.19.5 Borrower has at all times during its existence maintained and will continue to maintain all of Borrower's books, records, financial statements and bank accounts separate from those of any other person or entity, and to the extent allowed by applicable law, Borrower will file its own tax returns. Borrower has at all times during its existence maintained and will continue to maintain Borrower's books, records, resolutions and agreements as official records.

1.19.6 Borrower is and will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other person or entity (including any affiliate of Borrower or member of Borrower), has at all times conducted and will continue to conduct business in Borrower's own name, has at all times corrected and shall correct any known misunderstanding regarding Borrower's status as a separate entity, has not identified and shall not identify itself as a division or part of any other entity and has

4

maintained and shall continue to maintain and utilize separate stationery, invoices and checks bearing Borrower's own name.

1.19.7 Borrower has maintained and will continue to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of Borrower's contemplated business operations.

1.19.8 Neither Borrower nor any member of Borrower will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Borrower.

1.19.9 Borrower has not commingled and will not commingle the funds and other assets of Borrower with those of any other person or entity, and Borrower has not controlled and will not control the decisions with respect to the daily affairs of any other person or entity.

1.19.10 Borrower has maintained and will continue to maintain Borrower's assets in such a manner that it would not be costly or difficult to segregate, ascertain or identify Borrower's assets from those of any Affiliate or member of Borrower or any other person or entity.

1.19.11 Borrower has not held and does not and will not hold itself out to be responsible for the debts or obligations of any other person or entity.

1.19.12 Borrower has at all times during its existence held, and will continue to hold, all of Borrower's assets in Borrower's own name.

1.19.13 Borrower has not at any time during Borrower's existence guaranteed or become obligated for, and will not in the future guarantee or become obligated for, the debts of any other person or entity.

1.19.14 Except as specifically provided in the Loan Documents or as approved by Lender in a writing signed by Lender, no other person or entity has ever guaranteed or become obligated for Borrower's debts at any time during Borrower's existence, and except as specifically provided in the Loan Documents or as approved by Lender in a writing signed by Lender, Borrower will not permit any other person or entity to guarantee or become obligated for Borrower's debts at any time in the future.

1.19.15 Borrower has not at any time during Borrower's existence held, and will not in the future hold, out Borrower's credit as being available to satisfy the obligations of any other person or entity.

1.19.16 No other person or entity has ever held, and Borrower will not permit any other person or entity to hold, out Borrower's credit as being available to satisfy the obligations of any other person or entity.

1.19.17 Borrower has not at any time during Borrower's existence bought or held, and will not in the future buy or hold, evidence of indebtedness issued by any Affiliates or members of Borrower.

1.19.18 Borrower has at all times during Borrower's existence allocated fairly and reasonably (and paid or charged for, as applicable), and will continue to allocate fairly and reasonably (and pay or charge for, as applicable), any overhead expenses that are shared with an Affiliate of Borrower, including paying for office space provided by and services performed by any employee of an Affiliate.

1.19.19 Borrower has not at any time during its existence pledged, and will not in the future pledge, Borrower's assets for the benefit of any other person or entity.

1.19.20 No other person or entity has ever pledged, and Borrower will not permit any other person or entity to pledge, Borrower's assets for such other person's or entity's benefit.

1.19.21 No other entity has ever identified, and Borrower will not permit any other entity to identify, Borrower as a division of any other such entity.

1.19.22 Each member of Borrower shall at all times comply, and shall cause Borrower to comply, with each of the representations, warranties and covenants contained in this Section 1.19 as if such representation, warranty or covenant was made directly by such member.

2.    Covenants and Agreements. Borrower covenants and agrees to the following:

2.1    Evidence of Insurance. Borrower acknowledges that under the Deed of Trust, Borrower is required to maintain certain insurance coverage with respect to the Property and to deliver evidence of such insurance coverage to Lender. Borrower shall deliver or cause to be delivered such required evidence of insurance to Lender within five days immediately following the closing of the Loan.

2.2    Exercise of Lender's Remedies. Borrower acknowledges that Lender shall have the right to exercise its rights and remedies under the Loan Documents and the Deed of Trust simultaneously or in any manner or order Lender determines in its sole discretion. In exercising any right or remedy under the Loan Documents and the Deed of Trust, Lender does not waive or preclude the subsequent exercise of any rights or remedies under the Loan Documents and the Deed of Trust.

2.3    Commercial Loan; Use of Loan Proceeds. Borrower represents, warrants and acknowledges that (i) the Loan is being obtained solely for the purpose of acquiring and/or improving a commercial investment property or a non-owner occupied residential investment property, and as to any residential property, such property will not at any time while the Loan is outstanding be occupied by Borrower or any person with a direct or indirect ownership interest in Borrower; (ii) the Loan is not being obtained nor will the Loan proceeds be used for consumer, personal, family or household purposes, and (iii) the

6

Loan will be used to purchase and/or improve the Property and to pay the expenses of the Loan as required by the Loan Documents, and for no other purpose.

2.4     Borrower's Payment of Lender's Legal and Related Expenses. If any attorney or other professional is engaged by Lender to enforce, defend, or advise Lender concerning any provision of the Note, the Deed of Trust, any of the other Loan Documents, or as a consequence of any default thereunder, whether or not there is a foreclosure of the Deed of Trust and whether or not any action or proceeding is filed regarding the Note, including, without limitation, by reason of representation of Lender's interests in any bankruptcy case or proceeding of Borrower or the monitoring of the status of and court filings in such bankruptcy case, then Borrower shall pay to Lender, upon demand, the amount of all reasonable fees and expenses of such attorneys and other experts and professionals and all costs incurred by Lender in connection therewith, through all appeals to collection of judgment, together with interest thereon from the date of demand until paid, at the rate of interest then applicable to the principal balance of the Note.   All such obligations of Borrower shall survive any judgment rendered in an action on the Note and shall not be merged into any such judgment.

2.5     Errors and Omissions.  If any documents evidencing and/or securing the above-referenced Loan omit, misstate or inaccurately reflect (collectively, the "Error") the correct terms and provisions of the Loan (as determined by Lender, in its sole and absolute discretion), due to a clerical or scrivener's error by Lender, Borrower or their agents or any escrow agent or title company, then Borrower shall, promptly upon request by Lender, but in no event later than five (5) business days after written notice from Lender to Borrower correct the Error and/or execute such documents as Lender deems necessary or appropriate to remedy the Error.  Borrower's failure to initial or execute such documents as required shall constitute an "Event of Default" under the Loan Documents.   The provisions of this Section shall survive the closing of the Loan and shall continue thereafter.

3.      Indemnity. This Certificate is made and executed in order to induce Lender to make a loan to Borrower in the amount set forth in the Recitals on page 1 hereof, secured by a first priority lien on the Property. Borrower agrees and acknowledges that Lender is relying on the completeness and accuracy of this Certificate in making the Loan,  and Borrower agrees to and hereby does indemnify and hold Lender harmless against any loss, cost, and expense that Lender may suffer, including, without limitation, expenses as set forth in Section 2.4 above, arising out of or in connection with any inaccuracy (which term includes misleading, deceptive and incomplete statements) in the statements herein certified by Borrower.

4.      Survival. This Certificate is a certification of representations and warranties and contains covenants that shall survive the funding of the Loan, the recordation and filing of the Deed of Trust and applicable Loan Documents, and any legal action and judgment and order entered in connection therewith.

5.      Default. If any of the representations, warranties, certifications herein are now or shall hereafter prove to have been materially false when made or if Borrower fails to fulfill any of its covenants or other obligations made in or under this Certificate, such falsity or such failure shall constitute an "*Event of Default*" under this Certificate and under the Loan

7

Documents and the Deed of Trust, entitling Lender, its successors and assigns, to exercise any or all of the remedies provided for in the Loan Documents and the Deed of Trust.

6.    Severability. If any term or provision of this Certificate shall, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Certificate shall not be affected thereby, but such term or provision shall be reduced or otherwise modified by such court or authority only to the minimum extent necessary to make it valid and enforceable, and each term and provision of this Certificate shall be valid and enforceable to the fullest extent permitted by law. If any term or provision cannot be reduced or modified to make it reasonable and permit its enforcement, it shall be severed from this Certificate and the remaining terms shall be interpreted in such a way as to give maximum validity and enforceability to this Certificate. It is the intention of Borrower that if any provision of this Certificate is capable of two constructions, one of which would render the provision void and the other of which would render the provision valid, then the provision shall have the meaning that renders it valid.

7.    Headings and Captions; Sole Discretion. The headings and captions in this Certificate are for convenience of reference only and shall in no way alter or modify the terms of this Certificate. As used in this Certificate, "*sole discretion*" shall mean sole, absolute, unfettered and unreviewable judgment and discretion without regard to whether such judgment or discretion is exercised reasonably or unreasonably.

8.    Successors. This Certificate shall be binding upon Borrower and its respective successors and assigns and shall inure to the benefit of Lender and its successors and assigns.

9.    Governing Law. This Certificate shall be governed by, and construed and enforced in accordance with, the internal substantive laws of the State of California (without regard to choice of law principles). Borrower acknowledges that the Loan has been primarily negotiated with Lender in California, and that the Loan will be funded in California. Lender, in its sole discretion, may bring a suit, action or other proceeding arising out of or relating to this Certificate, in any court of competent jurisdiction located in California. Borrower hereby irrevocably submits exclusively to the process, jurisdiction, and venue of the courts of the State of California, and to the process, jurisdiction and venue of the United States District Courts of California, for purposes of suit, action or other proceedings arising out of or relating to this Certificate and/or the Loan and the Loan Documents, and without limiting the generality of the foregoing hereby waives and agrees not to assert by way of motion, defense or otherwise in any such suit, action or proceeding any claim that any such party is not personally subject to the jurisdiction of the above-named courts, that suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. If any legal proceedings are instituted with respect to this Certificate or the Loan, Borrower and its trustees, partners, managers, members, officers, directors and shareholders shall appear, at Lender's option, in its sole discretion, in the California county where such suit, action or proceeding has been filed, for the purposes of all such proceedings and all discovery conducted in connection therewith, including, without limitation, all depositions, and Borrower and its trustees, partners, managers, members, officers, directors and shareholders hereby waive all rights to require that such proceedings or discovery take place outside of said county in the State of California.

8

10.    Signature. A signed original, copy, or facsimile copy of this Borrower's Certificate shall be deemed an original and shall cause this Borrower's Certificate to be deemed effective upon Lender's receipt of a signed original, copy, or facsimile copy.

11.    WAIVER OF JURY TRIAL INFORMED DELIVERY OF WAIVERS. BORROWER WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS CERTIFICATE IS BEING GIVEN OR ANY ASPECT OF ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH THE LOAN TRANSACTION.

BORROWER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THE JURY TRIAL WAIVER STATED ABOVE AND MAKES THIS WAIVER KNOWINGLY, INTENTIONALLY AND VOLUNTARILY. BORROWER ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.

BORROWER FURTHER ACKNOWLEDGES HAVING HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL, SELECTED OF BORROWER'S OWN FREE WILL IN CONNECTION WITH THE LOAN TRANSACTION, INCLUDING AS TO EACH OF THE WAIVERS STATED IN THIS CERTIFICATE AND IN EACH OF THE OTHER LOAN DOCUMENTS, AND ACKNOWLEDGES THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS EACH SUCH WAIVER WITH COUNSEL AND HAS THEREAFTER AGREED TO WAIVE RIGHTS AS EXPRESSLY SET FORTH HEREIN AND IN THE OTHER LOAN DOCUMENTS.

*[Remainder of Page Intentionally Blank. Signatures on Following Page.]*

BORROWER:

Ngoc Tuyet Lam, a single woman

By: _____
Ngoc Tuyet Lam

## NOTARY ACKNOWLEDGEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF Orange )

On December 1st, 2021 before me, Janet Pham _____, Notary Public, personally appeared Ngoc Tuyet Lam _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JANET PHAM
Notary Public - California
Orange County
Commission # 2241000
My Comm. Expires May 3, 2022

10

## EXHIBIT A

### Legal Description of the Real Property

See Exhibit "A" attached hereto and made apart hereof.

## SCHEDULE 1.7

Material Defects in Improvements on the Real Property

## SCHEDULE 1.13

### Lease and Other Agreements Affecting the Real Property

## BORROWER'S CERTIFICATE

This Borrower's Certificate (the "*Certificate*") is made to be effective December 1, 2021 (the "*Effective Date*"), by Ngan Thi Kim Tran, a single woman , ("*Borrower*"), in favor of Bench Equity, L.L.C., an Arizona limited liability company ("*Lender*").

RECITALS:

A.    Lender is making a loan (the "*Loan*") to Borrower in the principal amount of $870,000.00to be evidenced by a Promissory Note (the "*Note*") and secured by, among other things:

(1) a Deed of Trust With Absolute Assignment Of Leases And Rents, Security Agreement And Fixture Filing (the "*Deed of Trust*"), executed by Borrower, as Trustor, and in favor of Lender, as Beneficiary, encumbering certain real property located in Orange County, California, which is more particularly described in Exhibit A attached hereto and by reference incorporated herein, together with all improvements now or hereafter located thereon and other property all as more fully described in the Deed of Trust.

B.    As a condition precedent to making the Loan, Lender has required and Borrower has agreed to make this Certificate. Borrower intends that Lender shall rely on the presentations, warranties and certifications in this Certificate in making the Loan.

REPRESENTATIONS, WARRANTIES AND COVENANTS:

1.    Representations and Warranties. Borrower hereby represents, warrants and certifies to Lender as follows:

1.1    Organization and Standing. Borrower is a  duly organized, validly existing and in good standing under the laws of the State of  and is duly registered with and permitted to do business in the State of California.

1.2    Authority. Borrower has the authority to enter into the Loan transaction and to enter into the Loan Documents (as defined below); and Ngan Thi Kim Tran, as the person signing on behalf of Borrower, has full power and authority to act on behalf of and bind Borrower and to execute the following: (a) the Note; (b) the Deed of Trust; (c) this Certificate; and (d) all other documents required by Lender to be executed by Borrower in connection with the Loan, together with any renewal or renewals thereof, any additional security therefor, or any substituted security therefor. The documents referred to in (a) through (d) above are hereafter referred to collectively as the "Loan Documents."

1.3    Organizational Documents. Borrower has delivered to Lender true and correct copies of (i) Borrower's formation documents filed with the California Secretary of State on the date of  as file number  and (ii) if Borrower is organized in a state other than

1

California, Borrower's registration and certificate of status on file with the , dated and filed on as file number , which documents as identified in clauses (i) and (ii) preceding are in full force and effect and have not been amended or modified. Borrower has also delivered true, complete and correct copies of its operating agreement, or other governance documents , dated  and the following amendments thereto, dated as hereinafter listed (collectively, "Borrower's Governance Documents"): . Borrower's Governance Documents are in full force and effect, and have not been modified or amended, except as set forth above in this Section 1.3.

1.4     Enforceability. All of the Loan Documents have been duly executed and delivered to Lender by Borrower. The Loan Documents are legal, valid and binding documents, enforceable against Borrower in accordance with their respective terms.

1.5     No Consents. Neither the execution nor the performance of the Note, the Deed of Trust or any of the other Loan Documents by Borrower requires the consent or approval of any other party or will result in any breach or contravention of or default under any covenant, warranty or agreement in any mortgage, deed of trust, lease, indenture, loan agreement, instrument, agreement, law, statute or regulation to which Borrower is a party or by which Borrower may be bound or affected. The execution of the Deed of Trust does not require the consent or approval of any other party nor will it result in any breach or contravention of or default under any covenant, warranty or agreement in any mortgage, deed of trust, lease, indenture, loan agreement, instrument, agreement, law, statute or regulation to which Borrower is a party or by which Borrower may be bound or affected.

1.6     Compliance. To the best of Borrower's knowledge, after due inquiry and investigation, the Property is in compliance with all applicable laws,  statutes, regulations, ordinances, requirements, covenants, conditions and restrictions relating to the present use or occupancy of the Property. The Property consists of separate legal parcels.

1.7     Improvements. To the best of Borrower's knowledge, after due inquiry and investigation, any buildings and improvements located on the Property have been completed, are of good quality and workmanship and are free of any material defect, except as disclosed on Schedule 1.7 attached hereto and incorporated herein.

1.8     Public Improvements. To the best of Borrower's knowledge, after due inquiry and investigation, there are no intended public improvements that will or could result in any charges being assessed against the Property that will result in a lien upon the Property.

1.9     Condemnation. To the best of Borrower's knowledge, after due inquiry and investigation, there is no impending or contemplated condemnation or taking by inverse condemnation of the Property, or any portion thereof, by any governmental authorities. Borrower has not entered into any agreement to transfer the Property, or any portion thereof, in lieu of a condemnation.

1.10    No Suits. There are no lawsuits, complaints or counterclaims pending or threatened against Borrower or the Property that would have an adverse effect on the business or financial condition of the Property.

2

1.11.   Agreements. Borrower has not entered into and there is not existing any other agreement, written or oral under which Borrower is or could become obligated to transfer the Property, or any portion thereof, to a third party.

1.12    Property Information. To the best of Borrower's knowledge, after due inquiry and investigation, all documents and information delivered by Borrower to Lender with respect to the Property are true, accurate and correct in all material respects.

1.13    Leases. Borrower has not entered into any lease, operating agreement, license, development agreement, option agreement or other agreement affecting the Property, except as disclosed on Schedule 1.13 attached hereto and incorporated herein..

1.14    Bankruptcy Proceedings. Borrower has not: (a) made a general assignment for the benefit of creditors; (b) filed any voluntary petition in bankruptcy, or received notice of the filing of any involuntary petition in bankruptcy against it; (c) received a notice of the appointment of a receiver to take possession of all or substantially all of any of its assets; (d) within 12 months preceding the date of this Agreement, admitted in writing its inability to pay its debts as they come due; or (e) made an offer of settlement, extension or composition to its creditors generally.

1.15    No Defenses. Upon the funding of the Loan, the amount of the outstanding principal balance due on the Note will be $870,000.00 and Borrower has no claims, defenses or offsets against payment of the same.

1.16    Brokerage. Borrower has not agreed to pay and is not obligated to pay a commission to any person or entity in connection with the Loan. If any person or entity shall assert a claim to a fee or commission on account of the alleged employment by or agreement with Borrower, Borrower shall and does hereby indemnify Lender, and agrees to hold Lender harmless from, any such claim or any action or proceeding brought on such claim, including, without limitation, attorneys' and witness fees and court costs incurred by Lender in defending against such claim.

1.17    Full Disclosure. Borrower has not omitted to disclose to Lender any information necessary to make the Loan submission of Borrower complete and not misleading, including, without limitation, information regarding: (a) the Loan transaction; (b) the Property; and (c) the financial condition of Borrower. All information given by Borrower to Lender is true and correct. There has been no adverse material change, financial or otherwise, in the condition of Borrower or in any feature of the Property from that disclosed to Lender in any data heretofore submitted to Lender.

1.18    Specially Designated Nationals and Blocked Persons List. Neither Borrower nor any member of Borrower (a) is listed on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, Department of the Treasury ("OFAC") pursuant to Executive Order number 13224, 66 Federal Register 49079 (September 25, 2001) (the "Order"); (b) is listed on any other list of terrorists or terrorist organizations maintained pursuant to the Order, the rules and regulations of the OFAC or any

3

other applicable requirements contained in any enabling legislation or other executive orders in respect of the Order (the Order and such other rules, regulations, legislation or orders are, collectively, the "*Orders*"); (c) is engaged in activities prohibited in the Orders; and (d) has been convicted, pleaded nolo contendere, indicted, arraigned or custodially detained on charges involving money laundering or predicate crimes to money laundering.

### 1.19    Special Purpose Entity.

1.19.1 Borrower has not entered into and will not enter into any transaction with an Affiliate without the prior written consent of Lender nor shall Borrower, if such consent is granted, enter into such a transaction upon terms and conditions that are not intrinsically fair and substantially similar to those that would be available on an arms-length basis with a non-affiliated third party. For the purposes of this Section 1.19, "*Affiliate*" shall mean any person or entity that directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with Borrower or any member of Borrower.

1.19.2 Borrower has not made and will not make any loans or advances to any person or entity, and has not acquired and shall not acquire obligations or securities of any Affiliate of Borrower.

1.19.3 Borrower is and intends to remain solvent and Borrower has at all times during its existence paid and will continue to pay Borrower's debts, liabilities and expenses (including, as applicable, shared personnel and overhead expenses) only from Borrower's assets as the same shall become due.

1.19.4 Borrower has done or caused to be done and will do all things necessary to observe its good standing and existence as a Corporation and all other organizational formalities and preserve Borrower's existence, and Borrower will not, nor will Borrower permit, any member of Borrower to amend, modify or otherwise change the articles of organization, operating agreement or other organizational documents or Borrower or any member without the prior written consent of Lender.

1.19.5 Borrower has at all times during its existence maintained and will continue to maintain all of Borrower's books, records, financial statements and bank accounts separate from those of any other person or entity, and to the extent allowed by applicable law, Borrower will file its own tax returns. Borrower has at all times during its existence maintained and will continue to maintain Borrower's books, records, resolutions and agreements as official records.

1.19.6 Borrower is and will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other person or entity (including any affiliate of Borrower or member of Borrower), has at all times conducted and will continue to conduct business in Borrower's own name, has at all times corrected and shall correct any known misunderstanding regarding Borrower's status as a separate entity, has not identified and shall not identify itself as a division or part of any other entity and has

4

maintained and shall continue to maintain and utilize separate stationery, invoices and checks bearing Borrower's own name.

1.19.7 Borrower has maintained and will continue to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of Borrower's contemplated business operations.

1.19.8 Neither Borrower nor any member of Borrower will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Borrower.

1.19.9 Borrower has not commingled and will not commingle the funds and other assets of Borrower with those of any other person or entity, and Borrower has not controlled and will not control the decisions with respect to the daily affairs of any other person or entity.

1.19.10 Borrower has maintained and will continue to maintain Borrower's assets in such a manner that it would not be costly or difficult to segregate, ascertain or identify Borrower's assets from those of any Affiliate or member of Borrower or any other person or entity.

1.19.11 Borrower has not held and does not and will not hold itself out to be responsible for the debts or obligations of any other person or entity.

1.19.12 Borrower has at all times during its existence held, and will continue to hold, all of Borrower's assets in Borrower's own name.

1.19.13 Borrower has not at any time during Borrower's existence guaranteed or become obligated for, and will not in the future guarantee or become obligated for, the debts of any other person or entity.

1.19.14 Except as specifically provided in the Loan Documents or as approved by Lender in a writing signed by Lender, no other person or entity has ever guaranteed or become obligated for Borrower's debts at any time during Borrower's existence, and except as specifically provided in the Loan Documents or as approved by Lender in a writing signed by Lender, Borrower will not permit any other person or entity to guarantee or become obligated for Borrower's debts at any time in the future.

1.19.15 Borrower has not at any time during Borrower's existence held, and will not in the future hold, out Borrower's credit as being available to satisfy the obligations of any other person or entity.

1.19.16 No other person or entity has ever held, and Borrower will not permit any other person or entity to hold, out Borrower's credit as being available to satisfy the obligations of any other person or entity.

5

1.19.17 Borrower has not at any time during Borrower's existence bought or held, and will not in the future buy or hold, evidence of indebtedness issued by any Affiliates or members of Borrower.

1.19.18 Borrower has at all times during Borrower's existence allocated fairly and reasonably (and paid or charged for, as applicable), and will continue to allocate fairly and reasonably (and pay or charge for, as applicable), any overhead expenses that are shared with an Affiliate of Borrower, including paying for office space provided by and services performed by any employee of an Affiliate.

1.19.19 Borrower has not at any time during its existence pledged, and will not in the future pledge, Borrower's assets for the benefit of any other person or entity.

1.19.20 No other person or entity has ever pledged, and Borrower will not permit any other person or entity to pledge, Borrower's assets for such other person's or entity's benefit.

1.19.21 No other entity has ever identified, and Borrower will not permit any other entity to identify, Borrower as a division of any other such entity.

1.19.22 Each member of Borrower shall at all times comply, and shall cause Borrower to comply, with each of the representations, warranties and covenants contained in this Section 1.19 as if such representation, warranty or covenant was made directly by such member.

2. Covenants and Agreements. Borrower covenants and agrees to the following:

2.1 Evidence of Insurance. Borrower acknowledges that under the Deed of Trust, Borrower is required to maintain certain insurance coverage with respect to the Property and to deliver evidence of such insurance coverage to Lender. Borrower shall deliver or cause to be delivered such required evidence of insurance to Lender within five days immediately following the closing of the Loan.

2.2 Exercise of Lender's Remedies. Borrower acknowledges that Lender shall have the right to exercise its rights and remedies under the Loan Documents and the Deed of Trust simultaneously or in any manner or order Lender determines in its sole discretion. In exercising any right or remedy under the Loan Documents and the Deed of Trust, Lender does not waive or preclude the subsequent exercise of any rights or remedies under the Loan Documents and the Deed of Trust.

2.3 Commercial Loan: Use of Loan Proceeds. Borrower represents, warrants and acknowledges that (i) the Loan is being obtained solely for the purpose of acquiring and/or improving a commercial investment property or a non-owner occupied residential investment property, and as to any residential property, such property will not at any time while the Loan is outstanding be occupied by Borrower or any person with a direct or indirect ownership interest in Borrower; (ii) the Loan is not being obtained nor will the Loan proceeds be used for consumer, personal, family or household purposes, and (iii) the

6

Loan will be used to purchase and/or improve the Property and to pay the expenses of the Loan as required by the Loan Documents, and for no other purpose.

2.4     Borrower's Payment of Lender's Legal and Related Expenses. If any attorney or other professional is engaged by Lender to enforce, defend, or advise Lender concerning any provision of the Note, the Deed of Trust, any of the other Loan Documents, or as a consequence of any default thereunder, whether or not there is a foreclosure of the Deed of Trust and whether or not any action or proceeding is filed regarding the Note, including, without limitation, by reason of representation of Lender's interests in any bankruptcy case or proceeding of Borrower or the monitoring of the status of and court filings in such bankruptcy case, then Borrower shall pay to Lender, upon demand, the amount of all reasonable fees and expenses of such attorneys and other experts and professionals and all costs incurred by Lender in connection therewith, through all appeals to collection of judgment, together with interest thereon from the date of demand until paid, at the rate of interest then applicable to the principal balance of the Note.   All such obligations of Borrower shall survive any judgment rendered in an action on the Note and shall not be merged into any such judgment.

2.5     Errors and Omissions. If any documents evidencing and/or securing the above-referenced Loan omit, misstate or inaccurately reflect (collectively, the "Error") the correct terms and provisions of the Loan (as determined by Lender, in its sole and absolute discretion), due to a clerical or scrivener's error by Lender, Borrower or their agents or any escrow agent or title company, then Borrower shall, promptly upon request by Lender, but in no event later than five (5) business days after written notice from Lender to Borrower correct the Error and/or execute such documents as Lender deems necessary or appropriate to remedy the Error.  Borrower's failure to initial or execute such documents as required shall constitute an "Event of Default" under the Loan Documents.   The provisions of this Section shall survive the closing of the Loan and shall continue thereafter.

3.      Indemnity. This Certificate is made and executed in order to induce Lender to make a loan to Borrower in the amount set forth in the Recitals on page 1 hereof, secured by a first priority lien on the Property. Borrower agrees and acknowledges that Lender is relying on the completeness and accuracy of this Certificate in making the Loan,  and Borrower agrees to and hereby does indemnify and hold Lender harmless against any loss, cost, and expense that Lender may suffer, including, without limitation, expenses as set forth in Section 2.4 above, arising out of or in connection with any inaccuracy (which term includes misleading, deceptive and incomplete statements) in the statements herein certified by Borrower.

4.      Survival. This Certificate is a certification of representations and warranties and contains covenants that shall survive the funding of the Loan, the recordation and filing of the Deed of Trust and applicable Loan Documents, and any legal action and judgment and order entered in connection therewith.

5.      Default. If any of the representations, warranties, certifications herein are now or shall hereafter prove to have been materially false when made or if Borrower fails to fulfill any of its covenants or other obligations made in or under this Certificate, such falsity or such failure shall constitute an *"Event of Default"* under this Certificate and under the Loan

7

Documents and the Deed of Trust, entitling Lender, its successors and assigns, to exercise any or all of the remedies provided for in the Loan Documents and the Deed of Trust.

6.    Severability. If any term or provision of this Certificate shall, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Certificate shall not be affected thereby, but such term or provision shall be reduced or otherwise modified by such court or authority only to the minimum extent necessary to make it valid and enforceable, and each term and provision of this Certificate shall be valid and enforceable to the fullest extent permitted by law. If any term or provision cannot be reduced or modified to make it reasonable and permit its enforcement, it shall be severed from this Certificate and the remaining terms shall be interpreted in such a way as to give maximum validity and enforceability to this Certificate. It is the intention of Borrower that if any provision of this Certificate is capable of two constructions, one of which would render the provision void and the other of which would render the provision valid, then the provision shall have the meaning that renders it valid.

7.    Headings and Captions; Sole Discretion. The headings and captions in this Certificate are for convenience of reference only and shall in no way alter or modify the terms of this Certificate. As used in this Certificate, "*sole discretion*" shall mean sole, absolute, unfettered and unreviewable judgment and discretion without regard to whether such judgment or discretion is exercised reasonably or unreasonably.

8.    Successors. This Certificate shall be binding upon Borrower and its respective successors and assigns and shall inure to the benefit of Lender and its successors and assigns.

9.    Governing Law. This Certificate shall be governed by, and construed and enforced in accordance with, the internal substantive laws of the State of California (without regard to choice of law principles). Borrower acknowledges that the Loan has been primarily negotiated with Lender in California, and that the Loan will be funded in California. Lender, in its sole discretion, may bring a suit, action or other proceeding arising out of or relating to this Certificate, in any court of competent jurisdiction located in California. Borrower hereby irrevocably submits exclusively to the process, jurisdiction, and venue of the courts of the State of California, and to the process, jurisdiction and venue of the United States District Courts of California, for purposes of suit, action or other proceedings arising out of or relating to this Certificate and/or the Loan and the Loan Documents, and without limiting the generality of the foregoing hereby waives and agrees not to assert by way of motion, defense or otherwise in any such suit, action or proceeding any claim that any such party is not personally subject to the jurisdiction of the above-named courts, that suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. If any legal proceedings are instituted with respect to this Certificate or the Loan, Borrower and its trustees, partners, managers, members, officers, directors and shareholders shall appear, at Lender's option, in its sole discretion, in the California county where such suit, action or proceeding has been filed, for the purposes of all such proceedings and all discovery conducted in connection therewith, including, without limitation, all depositions, and Borrower and its trustees, partners, managers, members, officers, directors and shareholders hereby waive all rights to require that such proceedings or discovery take place outside of said county in the State of California.

8

10. <u>Signature</u>. A signed original, copy, or facsimile copy of this Borrower's Certificate shall be deemed an original and shall cause this Borrower's Certificate to be deemed effective upon Lender's receipt of a signed original, copy, or facsimile copy.

11. <u>WAIVER OF JURY TRIAL INFORMED DELIVERY OF WAIVERS.</u> BORROWER WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS CERTIFICATE IS BEING GIVEN OR ANY ASPECT OF ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH THE LOAN TRANSACTION.

BORROWER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THE JURY TRIAL WAIVER STATED ABOVE AND MAKES THIS WAIVER KNOWINGLY, INTENTIONALLY AND VOLUNTARILY. BORROWER ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.

BORROWER FURTHER ACKNOWLEDGES HAVING HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL, SELECTED OF BORROWER'S OWN FREE WILL IN CONNECTION WITH THE LOAN TRANSACTION, INCLUDING AS TO EACH OF THE WAIVERS STATED IN THIS CERTIFICATE AND IN EACH OF THE OTHER LOAN DOCUMENTS, AND ACKNOWLEDGES THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS EACH SUCH WAIVER WITH COUNSEL AND HAS THEREAFTER AGREED TO WAIVE RIGHTS AS EXPRESSLY SET FORTH HEREIN AND IN THE OTHER LOAN DOCUMENTS.

*[Remainder of Page Intentionally Blank. Signatures on Following Page.]*

BORROWER:

Ngan Thi Kim Tran, a single woman

By: _____
Ngan Thi Kim Tran

## NOTARY ACKNOWLEDGEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA     )
                       ) ss.
COUNTY OF Orange    )

On December 1st, 2021 before me, Janet Pham _____,
Notary Public, personally appeared Ngan Thi Kim Tran _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> JANET PHAM
> Notary Public - California
> Orange County
> Commission # 2241000
> My Comm. Expires May 3, 2022

10

## EXHIBIT A

## Legal Description of the Real Property

See Exhibit "A" attached hereto and made apart hereof.

## SCHEDULE 1.7

### Material Defects in Improvements on the Real Property

## SCHEDULE 1.13

Lease and Other Agreements Affecting the Real Property

**COAST CITIES
ESCROW**
You need it right. Now.

12501 Seal Beach Blvd., Suite 225, Seal Beach, CA 90740
Tel: (562) 596-6030 • Fax: (562) 596-6075

### BUYER/BORROWER STATEMENT
Final

File No.: 21-12827-TT
Officer/Escrow Officer: Tiffany Taylor

| | |
|---|---|
| Printed Date/Time: | 12/06/2021 - 11:35:03AM |
| Page | 1 of 1 |
| Closing Date: | 12/02/2021 |
| Disbursement Date: | |

Buyer/Borrower: Ngan Thi Kim Tran and Ngoc Tuyet Lam

Seller: Deirdre Jayne Bence and Herman John Kuhlendahl, Co-Trustees of the Trust Of Lillian M. Kuhlendahl Dated June 1, 1999

Property: 9872 Flamingo Avenue, Fountain Valley, CA 92708

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | 1,340,000.00 | |
| Earnest Money | | 45,000.00 |
| Additional Deposit | | 459,047.52 |
| **PRORATIONS/ADJUSTMENTS:** | | |
| Property Tax @ 861.35 per 6 month(s) 12/02/2021 to 1/01/2022 | 138.77 | |
| Seller Credit Buyer for Closing Costs | | 600.00 |
| **TITLE CHARGES** | | |
| Lender's Title Policy for 1,087,500.00: Western Resources Title | 993.00 | |
| Record Deed(s) of Trust: Western Resources Title | 106.00 | |
| Record Grant Deed: Western Resources Title | 16.00 | |
| Title Messenger Fees: Western Resources Title | 29.00 | |
| Title Wire Fee: Western Resources Title | 30.00 | |
| Electronic Recording Service Fee: To Be Determined | 40.00 | |
| Sub Escrow Fee: Western Resources Title | 62.50 | |
| **ESCROW CHARGES TO: Coast Cities Escrow** | | |
| Settlement Agent Fee | 3,427.50 | |
| Escrow Fee Discount | | 685.50 |
| **LENDER CHARGES** | | |
| New Deed of Trust to Bench Equity, LLC, an Arizona Limited Liability Company: | | 870,000.00 |
| Loan Fee @ 2.0000 %: Broker | 17,400.00 | |
| Prepaid Interest From 12/02/2021 To 1/01/2022, 30 Days, @ 253.7500/per day: Bench Equity, LLC, an Arizona Limited Liability Company | 7,358.75 | |
| Document Preparation: Bench Equity, LLC, an Arizona Limited Liability Company | 2,175.00 | |
| **ADDITIONAL DISBURSEMENTS:** | | |
| Homeowner's Insurance: Foremost Insurance | 1,348.00 | |
| Title-Notary Service Fees: Janet Pham | 225.00 | |
| **SUBTOTALS** | 1,373,349.52 | 1,375,333.02 |
| **DUE TO BUYER/BORROWER** | 1,983.50 | |
| **TOTALS** | 1,375,333.02 | 1,375,333.02 |

THIS IS A FINAL CLOSING STATEMENT

9709

**RECORDING REQUESTED BY**
Western Resources Title

**AND WHEN RECORDED MAIL DOCUMENT TO:**

NAME Bench Equity, LLC

**STREET ADDRESS**
1223 S. Clearview Avenue, Ste. 103

**CITY, STATE &
ZIP CODE**
Mesa, AZ 85209

**Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder**

|||||||||||||||||||||||||||||||||||||||||||| 106.00
*$R0013378477$*
**2021000732985 3:10 pm 12/03/21**
399 RW9A D11 A34 A36 S02   23
0.00 0.00 0.00 0.00 66.00 0.00 0.000.000.00 12.00

**SPACE ABOVE FOR RECORDER'S USE ONLY**

Deed of Trust with Absolute Assignment of Leases* and Rents, Security Agreement and Fixture Filing

*unrecorded leases

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

[✓] Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

[ ] Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

[ ] Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

[ ] Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)**

RECORDING REQUESTED BY
Western Resources Title

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME Bench Equity, LLC

STREET ADDRESS
1223 S. Clearview Avenue, Ste. 103

CITY, STATE &
ZIP CODE
Mesa, AZ 85209

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust with Absolute Assignment of Leases* and Rents, Security Agreement and Fixture Filing

\* unrecorded leases

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

[✓] Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

[ ] Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

[ ] Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

[ ] Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

9708·

RECORDING REQUESTED BY:
WESTERN RESOURCES TITLE COMPANY

225837

**When Recorded, Return to:**
**Bench Equity, L.L.C.**
**1223 S Clearview Avenue, Suite 103**
**Mesa, AZ 85209**

# DEED OF TRUST
## WITH ABSOLUTE ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

| | |
|---|---|
| **TRUSTOR:** | Ngan Thi Kim Tran, a single woman and Ngoc Tuyet Lam, a single woman, as Joint Tenants |
| **Address:** | 10042 Rangeview Drive<br>Santa Ana, CA 92705 |
| **BENEFICIARY:**<br>**Address:** | Bench Equity, L.L.C., an Arizona limited liability company<br>1223 S. Clearview Avenue, Suite 103<br>Mesa, AZ 85209 |
| **TRUSTEE:**<br>**Address:** | Coast Cities Escrow<br>12501 Seal Beach Blvd, Ste 225<br>Seal Beach, CA 90740 |
| **PROPERTY:** | 9872 Flamingo Ave<br>Fountain Valley, CA 92708 |

**PROPERTY** in Orange County, California, described as (the *"Real Property"*), legally described in **Exhibit A** attached hereto and by this reference incorporated herein.

This DEED OF TRUST WITH ABSOLUTE ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (*"Deed of Trust"*) is made among Trustor, Beneficiary and Trustee who agree as follows:

## ARTICLE 1. GRANT IN TRUST

1.    **Grant and Conveyance**. For good and valuable consideration, Trustor irrevocably grants, conveys and assigns to Trustee in Trust, for the benefit of Beneficiary, right of entry and possession with power of sale, the Real Property;

1

Together with all right, title, or interest of Trustor in any and all buildings and other improvements now or hereafter erected on the Property including, without limitation, fixtures, attachments, appliances, equipment, machinery, and other personal property attached to such buildings and other improvements (collectively, the "*Improvements*"), all of which shall be deemed and construed to be a part of the real property;

Together with all leasehold estate, right, title and interest of Trustor in and to all leases, or subleases covering the Property or the Improvements or any portion thereof now or hereafter existing or entered into, and all right, title and interest of Trustor thereunder, including, without limitation, all rights of Trustor against guarantors thereof, all cash or security deposits, advance rentals, and deposits or payments of similar nature (collectively, the "*Leases*");

Together with all rents, issues, profits, revenues and income thereof including all revenue, gross or net receipts, payments, and income derived from any business activity conducted by or on behalf of Trustor on the Real Property (*"Property Income"*);

Together with all easements, licenses, rights, minerals, oil and gas, appurtenances, abandoned or vacated streets, alleys and rights-of-way, privileges and interests now or hereafter attached to or used in connection with the Real Property;

Together with all policies of insurance on the Real Property and/or personal property located on the Real Property (the *"Personal Property"*) and proceeds thereof and all awards and proceeds of any condemnation or like proceeding affecting the Real and/or Personal Property;

Together with all water, drainage, irrigation and electrical or water user's rights appurtenant or related to the Real Property;

Together with all interest or estate which Trustor may hereafter acquire in any of the property described above, and all additions and accretions thereto, and the proceeds of any of the foregoing

The entire estate, property, right, title, and interest hereby conveyed to Trustee, as set forth more fully above, may hereafter be collectively referred to as the "*Trust Property.*" The listing of specific rights or property shall not be interpreted as a limit of general terms.

## ARTICLE 2. OBLIGATIONS SECURED

2.1  **Obligations Secured.** This Deed of Trust secures (all collectively, the "*Secured Obligations*"): (a) payment of all indebtedness evidenced by the Promissory Note by and between Trustor and Beneficiary, dated as of the Effective Date (as defined below), in the face amount of $870,000.00, interest and charges thereon and all extensions, modifications and renewals thereof (the *"Note"*); (b) payment of all other sums advanced hereunder to protect the security of this Deed of Trust with interest thereon; (c) performance of all agreements and obligations of Trustor hereunder, in the Note or in any other instrument securing the same; and (d) all other or future loans and advances by Beneficiary to Trustor which are or shall be secured hereby.

2

**2.2** **Obligations.** The term "obligations" is used herein in its broadest and most comprehensive sense and shall be deemed to include, without limitation, all interest and charges, prepayment charges (if any), late charges and loan fees at any time accruing or assessed on any of the Secured Obligations.

**2.3** **Incorporation.** All terms of the Secured Obligations and the documents evidencing such obligations are incorporated herein by this reference. All persons who may have or acquire an interest in the Trust Property shall be deemed to have notice of the terms of the Secured Obligations and to have notice, if provided therein, that: (a) the Note may permit borrowing, repayment and re-borrowing so that repayments shall not reduce the amounts of the Secured Obligations; and (b) the rate of interest on one or more Secured Obligations may vary from time to time.

## ARTICLE 3. ASSIGNMENT OF LEASES AND RENTS

**3.1** **Assignment.** Trustor hereby irrevocably assigns to Beneficiary all of Trustor's right, title and interest in, to and under: (a) all leases of the Trust Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Trust Property or any portion thereof, whether now existing or entered into after the date hereof ("Leases"); and (b) the rents, revenue, income, issues, deposits and profits of the Trust Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases ("Payments"). The term "Leases" shall also include all guarantees of and security for the lessees' performance thereunder, and all amendments, extensions, renewals or modifications thereto which are permitted hereunder. This is a present and absolute assignment, not an assignment for security purposes only, and Beneficiary's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Trust Property.

**3.2** **Grant Of License.** Beneficiary confers upon Trustor a license ("License") to collect and retain the Payments as they become due and payable, until the occurrence of a Default (as hereinafter defined). Upon a Default, the License shall be automatically revoked and Beneficiary may collect and apply the Payments pursuant to Section 6.4 without notice and without taking possession of the Trust Property. Trustor hereby irrevocably authorizes and directs the lessees under the Leases to rely upon and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the lessees' undertakings under the Leases, and the lessees shall have no right or duty to inquire as to whether any Default has actually occurred or is then existing hereunder. Trustor hereby relieves the lessees from any liability to Trustor by reason of relying upon and complying with any such notice or demand by Beneficiary.

**3.3** **Effect Of Assignment.** The foregoing irrevocable assignment shall not cause Beneficiary to be: (a) a mortgagee in possession; (b) responsible or liable for the control, care, management or repair of the Trust Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; or (c) responsible or liable for any waste committed on the Trust Property by the lessees under any of the Leases or any other parties; for any dangerous or defective condition of the Trust Property; or for any negligence in the management, upkeep, repair or control of the Trust Property resulting in loss

3

or injury or death to any lessee, licensee, employee, invitee or other person. Beneficiary and Trustee shall not directly or indirectly be liable to Trustor or any other person as a consequence of: (i) the exercise or failure to exercise by Beneficiary or Trustee, or any of their respective employees, agents, contractors or subcontractors, any of the rights, remedies or powers granted to Beneficiary or Trustee hereunder; or (ii) the failure or refusal of Beneficiary to perform or discharge any obligation, duty or liability of Trustor arising under the Leases.

**3.4** **Representations And Warranties Regarding Leases**. Trustor represents and warrants that as of the date hereof, there are no Leases in effect on the Trust Property. Notwithstanding any other provision of this Deed of Trust regarding the assignment of leases and rents to Beneficiary, Trustor shall not lease, rent, or offer for lease or rent the Trust Property without Beneficiary's prior written approval, which approval may be given, withheld, or conditioned in Beneficiary's sole discretion.

## ARTICLE 4. SECURITY AGREEMENT AND FIXTURE FILING

**4.1** **Security Interest**. Trustor hereby grants and assigns to Beneficiary as of the "Effective Date" (defined in the Loan Agreement) a security interest, to secure payment and performance of all of the Secured Obligations, in all of the following described personal property in which Trustor now or at any time hereafter has any interest (collectively, the "Collateral"):

4.1.1   All goods, building and other materials, supplies, inventory, work in process, equipment, machinery, fixtures, furniture, furnishings, signs and other personal property and embedded software included therein and supporting information, wherever situated, which are or are to be incorporated into, used in connection with, or appropriated for use on the Trust Property; together with all rents and security deposits derived from the Trust Property; all inventory, accounts, cash receipts, deposit accounts, accounts receivable, contract rights, licenses, agreements, general intangibles, payment intangibles, software, chattel paper (whether electronic or tangible), instruments, documents, promissory notes, drafts, letters of credit, letter of credit rights, supporting obligations, insurance policies, insurance and condemnation awards and proceeds, proceeds of the sale of promissory notes, any other rights to the payment of money, trade names, trademarks and service marks arising from or related to the ownership, management, leasing, operation, sale or disposition of the Trust Property or any business now or hereafter conducted thereon by Trustor; all development rights and credits, and any and all applications, permits, consents, approvals, licenses, authorizations and other rights granted by, given by or obtained from, any governmental entity with respect to the Trust Property; all water and water rights, wells and well rights, canals and canal rights, ditches and ditch rights, springs and spring rights, and reservoirs and reservoir rights appurtenant to or associated with the Trust Property, whether decreed or undecreed, tributary, non-tributary or not non-tributary, surface or underground or appropriated or unappropriated, and all shares of stock in water, ditch, lateral and canal companies, well permits and all other evidences of any of such rights; all deposits or other security now or hereafter made with or given to utility companies by Trustor with respect to the Trust Property; all advance payments of insurance premiums made by Trustor with respect to the Trust Property; all plans, drawings and specifications relating to the Trust Property; all loan funds held by Beneficiary, whether or not disbursed; all funds deposited with Beneficiary pursuant to any loan agreement; all reserves, deferred payments, deposits, accounts, refunds, cost savings and payments of any kind related to the Trust Property or

4

any portion thereof; together with all replacements and proceeds of, and additions and accessions to, any of the foregoing; together with all books, records and files relating to any of the foregoing.

4.1.2    As to all of the above described personal property which is or which hereafter becomes a "fixture" under applicable law, this Deed of Trust constitutes a fixture filing under the California Uniform Commercial Code, as amended or recodified from time to time ("UCC").

**4.2    Representations And Warranties.** Trustor represents and warrants that: (a) Trustor has, or will have, good title to the Collateral; (b) Trustor has not previously assigned or encumbered the Collateral, and no financing statement covering any of the Collateral has been delivered to any other person or entity; (c) Trustor's principal place of business is located at the address shown on the first page of this Deed of Trust; and (d) Trustor's legal name is exactly as set forth on the first page of this Deed of Trust and all of Trustor's organizational documents or agreements delivered to Beneficiary are complete and accurate in every respect.

**4.3    Covenants.**  Trustor  agrees:  (a)  to  execute  and  deliver  such  documents  as Beneficiary deems necessary to create, perfect and continue the security interests contemplated hereby; (b) not to change its name, and as applicable, its chief executive office, its principal residence or the jurisdiction in which it is organized and/or registered without giving Beneficiary prior written notice thereof; (c) to cooperate with Beneficiary in perfecting all security interests granted herein and in obtaining such agreements from third parties as Beneficiary deems necessary, proper or convenient in connection with the preservation, perfection or enforcement of any of its rights hereunder; and (d) that Beneficiary is authorized to file financing statements in the name of Trustor to perfect Beneficiary's security interest in Collateral.

**4.4    Rights Of Beneficiary.** In addition to Beneficiary's rights as a "Secured Party" under the UCC, Beneficiary may, but shall not be obligated to, at any time without notice and at the expense of Trustor: (a) give notice to any person of Beneficiary's rights hereunder and enforce such rights at law or in equity; (b) insure, protect, defend and preserve the Collateral or any rights or interests of Beneficiary therein; (c) inspect the Collateral; and (d) endorse, collect and receive any right to payment of money owing to Trustor under or from the Collateral. Notwithstanding the above, in no event shall Beneficiary be deemed to have accepted any property other than cash in satisfaction of any obligation of Trustor to Beneficiary unless Beneficiary shall make an express written election of said remedy under UCC §9620, or other applicable law.

**4.5    Rights Of Beneficiary On Default.** Upon the occurrence of a Default (hereinafter defined) under this Deed of Trust, then in addition to all of Beneficiary's rights as a "Secured Party" under the UCC or otherwise at law:

(a)    Beneficiary may (i) upon written notice, require Trustor to assemble any or all of the Collateral and make it available to Beneficiary at a place designated by Beneficiary; (ii) without prior notice, enter upon the Trust Property or other place where any of the Collateral may be located and take possession of, collect, sell, lease, license and dispose of any or all of the Collateral, and store the same at locations acceptable to Beneficiary at Trustor's expense; (iii) sell, assign and deliver at any place or in any lawful manner all or any part of the Collateral and bid and become the purchaser at any such sales;

5

(b)    Beneficiary may, for the account of Trustor and at Trustor's expense: (i) operate, use, consume, sell, lease, license or dispose of the Collateral as Beneficiary deems appropriate for the purpose of performing any or all of the Secured Obligations; (ii) enter into any agreement, compromise, or settlement, including insurance claims, which Beneficiary may deem desirable or proper with respect to any of the Collateral; and (iii) endorse and deliver evidences of title for, and receive, enforce and collect by legal action or otherwise, all indebtedness and obligations now or hereafter owing to Trustor in connection with or on account of any or all of the Collateral; and

(c)    In disposing of Collateral hereunder, Beneficiary may disclaim all warranties of title, possession, quiet enjoyment and the like. Any proceeds of any disposition of any Collateral may be applied by Beneficiary to the payment of expenses incurred by Beneficiary in connection with the foregoing, including reasonable attorneys' fees, and the balance of such proceeds may be applied by Beneficiary toward the payment of the Secured Obligations in such order of application as Beneficiary may from time to time elect.

Notwithstanding any other provision hereof, Beneficiary shall not be deemed to have accepted any property other than cash in satisfaction of any obligation of Trustor to Beneficiary unless Trustor shall make an express written election of said remedy under UCC §9620, or other applicable law. Trustor agrees that Beneficiary shall have no obligation to process or prepare any Collateral for sale or other disposition.

**4.6    Power Of Attorney.** Trustor hereby irrevocably appoints Beneficiary as Trustor's attorney in fact (such agency being coupled with an interest), and as such attorney in fact Beneficiary may, without the obligation to do so, in Beneficiary's name, or in the name of Trustor, prepare, execute and file or record financing statements, continuation statements, applications for registration and like papers necessary to create, perfect or preserve any of Beneficiary's security interests and rights in or to any of the Collateral, and, upon a Default hereunder take any other action required of Trustor; provided, however, that Beneficiary as such attorney in fact shall be accountable only for such funds as are actually received by Beneficiary.

**4.7    Possession And Use Of Collateral.** Except as otherwise provided in this Section or the other Loan Documents (as defined in the Loan Agreement), so long as no Default exists under this Deed of Trust or any of the Loan Documents, Trustor may possess, use, move, transfer or dispose of any of the Collateral in the ordinary course of Trustor's business and in accordance with the Loan Agreement.

## ARTICLE 5. RIGHTS AND DUTIES OF THE PARTIES

**5.1    Additional Payments.** Trustor shall pay all taxes, assessments, charges, fines and impositions attributable to the Trust Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Trustor shall promptly furnish to Beneficiary all notices of amounts to be paid under this paragraph. Trustor shall promptly furnish to Beneficiary receipts evidencing the payments that were made.

6

**5.2     Trustor's Representations and Warranties.**  Trustor represents, warrants and covenants that: (a) Trustor holds fee title to the Real Property, free and clear of all liens, encumbrances and other title exceptions except those approved by Beneficiary; (b) Trustor shall defend the title to the Trust Property against all claims and demands, subject to the approved exceptions; (c) any greater title to the Trust Property hereafter acquired by Trustor shall be subject hereto; (d) this Deed of Trust is free from all homestead, valuation and exemption rights and benefits whatsoever, which, notwithstanding Trustor's representation and warranty to Beneficiary that neither Trustor nor any member of Trustor's family resides or will reside in the Trust Property, Trustor hereby waives; and (e) this Deed of Trust constitutes a first priority lien and encumbrance against the Trust Property.  As a condition to making the loan described in this Deed of Trust, Trustor, at its expense, shall provide Beneficiary with an ALTA extended coverage lender's policy of title insurance in an amount acceptable to Beneficiary naming Beneficiary as insured and insuring that this Deed of Trust is a first priority lien against the Trust Property subject only to such matters as are approved by Beneficiary, all in Beneficiary's sole discretion.  The lender's policy of title insurance shall include such endorsements as Beneficiary may require.

**5.3     Payment of Secured Obligations.**  Trustor shall pay when due and before delinquency: (a) all Secured Obligations hereby; (b) all liens, taxes, assessments, fines, impositions and charges of every type or nature affecting the Trust Property; (c) all insurance premiums required herein; (d) all rents or charges for water, water delivery, sewer, gas, electricity, telephone and other utilities and services, waste removal, bills for repairs, and assessments on water stock in any way related to the Trust Property; (e) all costs, fees and expenses of this Deed of Trust including, without limitation, all fees of Trustee, reasonable attorneys' fees, title fees and all other costs and expenses incurred by Beneficiary or Trustee; and (f) all of the community or association dues or assessments related to the Trust Property, if any.

**5.4.     Other Encumbrances.**  Trustor shall pay or perform before delinquency all obligations under any prior or subordinate mortgage, deed of trust, agreement of sale or any other lien or encumbrance associated with the Trust Property (an *"Encumbrance"*).  If any such Encumbrance shall be in default by reason of nonpayment of principal or interest, or any part thereof, or for any other reason, Beneficiary may cure such default without notice, and the cost of curing such default, with interest at the *"Default Interest Rate"* specified in the Note, from the time of the advance or advances therefor, shall be added to the Secured Obligations and may be collected from Trustor upon demand at any time after such advance or advances are made, and the holder of the Note and Deed of Trust shall be subrogated to the rights of any lien holder so paid.  Immediately upon receiving any knowledge or notice of any default or claimed default under any Encumbrance, Trustor shall give written notice thereof to Beneficiary and shall give to Beneficiary immediately upon receipt thereof a true copy of each and every notice, summons, legal process, legal paper or other communication relating in any way to any Encumbrance or to the performance or enforcement thereof, or to any alleged default thereunder (*"Encumbrance Documents"*).  If payment of all or any part of principal or interest secured by any such Encumbrance shall not be made at the time specified within the Encumbrance Documents, then regardless of any postponement, extension, indulgence or forgiveness thereof which may be agreed to or acquiesced in by the holder of the Encumbrance, a sum equal to the amount of such principal or part thereof shall immediately become due and payable in reduction of the Secured Obligations; provided, however, that nothing herein contained shall be deemed or construed to entitle the owner or holder of this Deed of Trust to any payment in excess of

7

the sum hereby secured and interest thereon. If the principal amount due secured by any Encumbrance which is superior in lien priority to this Deed of Trust is increased over the amount of its unpaid principal as it exists on the date hereof, then upon Beneficiary's demand a sum equal to the amount of such increase shall immediately become due and payable in reduction of the Secured Obligations.

**5.5.** **Preservation of Trust Property; Leaseholds.** Trustor shall keep the Trust Property in good condition and repair and shall not commit waste or permit impairment or deterioration of the Trust Property, and shall not remove or demolish any Improvements without Beneficiary's prior written consent. Trustor shall repair, restore or construct in a workmanlike manner any Improvements that are damaged or are being altered or constructed and pay when due all claims for labor performed and materials furnished therefor. Trustor shall perfect and maintain all water, power and any other rights appurtenant to the Real Property. Trustor shall ensure compliance with all laws, regulations, ordinances, covenants, conditions and restrictions applicable to the use and occupancy of the Trust Property and take all other actions concerning the Trust Property that any prudent owner would take. Trustor agrees to comply with the provisions of any lease of the Trust Property that has been consented to by Beneficiary.

**5.6.** **Protection by Trustor.** Trustor shall defend, at Trustor's expense, any action or proceeding purporting to affect Trustor's interest in the Trust Property or the liens, rights or powers of Beneficiary or Trustee, or the rights and powers of Beneficiary or Trustee, or seeking to impose any liability on Beneficiary or Trustee because of any act or omission of Trustor. Trustor shall and does hereby agree to indemnify and hold Beneficiary and Trustee harmless from any such action or proceeding.

**5.7.** **Protection by Beneficiary or Trustee; Reimbursement.** Beneficiary or Trustee or both of them are authorized at their election to appear in and defend any action or proceeding purporting to affect the Trust Property or the liens, rights or powers of Beneficiary or Trustee; to pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or inferior hereto; and, in exercising any such powers, to pay necessary expenses, employ counsel, and to pay counsel's reasonable fees and costs. Without obligation to do so, Beneficiary or Trustee may further pay any amount or perform any obligation that is required of Trustor hereunder or take any other action or incur any other expense to protect the Trust Property and the security hereof. All amounts so paid or expenses so incurred shall bear interest at the highest lawful rate permitted under applicable law, or if no such limit then exists, at the *"Default Interest Rate"* specified in the Note, and shall be secured by this Deed of Trust as a lien on the Trust Property. Unless otherwise agreed, such amounts or expenses with interest shall be payable upon notice to Trustor requesting such payment. Beneficiary shall be subrogated to the lien of any other encumbrance discharged hereunder, notwithstanding any release of record of the same. Neither Beneficiary nor Trustee shall be obligated to perform or discharge any obligation or duty to be performed or discharged by Trustor under any lease, declaration or covenant. Trustor shall and does hereby agree to indemnify and hold Beneficiary and Trustee harmless, including, without limitation, the duty to defend, from any and all liability arising from or under any lease, declaration or covenant. Neither Beneficiary nor Trustee shall have any responsibility for the Trust Property or liability on account thereof to any lessee, invitee, association or any other person or entity.

**5.8.** **Property and Casualty Insurance.** Trustor shall keep all Improvements and all improvements thereafter erected on the Real Property insured against loss by earthquake, fire, hazards included within "special form insurance, f/k/a all risk insurance" and such other hazards, in an amount not less than the full replacement cost thereof. In the event that there shall be a dispute as to the amount which comprises full replacement cost, the decision of Beneficiary shall control. Trustor shall also insure all fixtures and Personal Property encumbered hereby against the same loss hazards in an amount acceptable to Beneficiary. In the event of loss, all property and casualty insurance proceeds shall be payable to Beneficiary and shall be applied by Beneficiary in such manner as Beneficiary chooses in its sole and absolute judgment and discretion. Any such application shall not cure any default hereunder or prevent Beneficiary from pursuing any of its remedies. If the Real Property is located in whole or in part in a flood hazard area as designated by the appropriate government entity, Trustor shall procure and keep in force such flood insurance as may be required to meet any applicable requirements of federal state or local laws or ordinances.

**5.9.** **Liability Insurance.** In addition to the insurance required to be maintained under Section 5.8 above, Trustor shall maintain in effect commercial general liability insurance coverage, including personal injury, bodily injury (including wrongful death), contractual liability and broad form property damage, with the following limits: (a) general aggregate, not less than $500,000.00; and (b) per occurrence combined single limit--not less than $500,000.00 and with only such deductibles as Beneficiary may approve. Beneficiary shall have no obligation, duty or liability as to the adequacy of such amount of insurance. Such liability insurance policy shall provide that the insurance cannot be invalidated as to the interest of Beneficiary by any act or negligence of any person owning the Trust Property, by foreclosure or other proceedings or notice of sale or by any change in the title or ownership of the Trust Property or by occupation of any insured structures for purposes more hazardous than permitted by such policies.

**5.10.** **Insurance-Generally.** Prior to closing the loan secured hereby, all insurance policies required by this Deed of Trust shall be issued by companies acceptable to Beneficiary, shall be on an "occurrence" and not on a "claims made" basis, shall be on forms which are acceptable to Beneficiary and shall recite Beneficiary's interest as mortgagee in a standard non-contributory mortgage clause effective as of the closing date or shall name Beneficiary as an additional insured. All such insurance shall be maintained until the Note has been paid in full without cost to Beneficiary and evidence thereof shall be provided to Beneficiary within five days following the Effective Date. Such insurance shall also contain such other provisions as Beneficiary may deem necessary or desirable to protect Beneficiary's interest and which are customarily issued by insurance companies, including, without limitation, a provision for 30-day prior written notice to Beneficiary of cancellation or any change in the risk or coverage's insured. In the event of loss, Trustor shall give prompt notice to the insurance carrier and to Beneficiary. Beneficiary may make proof of loss if not made promptly by Trustor. Any application or release of any insurance proceeds hereunder shall not cure or waive any Event of Default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

**5.11.** **Condemnation.** Any award of damages in connection with any condemnation or taking of or for injury to any of the Trust Property by reason of public use or for damages for private trespass or injury thereto is assigned in full and shall be paid to Beneficiary as further security for all Secured Obligations. Upon receipt of such monies Beneficiary may hold the same as further

9

security, or apply the same to the payment of the Secured Obligations or release all or a portion thereof to Trustor for the repairing or restoring the remainder of the Trust Property.

**5.12.** **Inspection.** Subject to the rights of tenants under leases, Beneficiary may make or cause to be made reasonable entries upon and inspections of the Trust Property at any time without notice to Trustor.

**5.13** **Exculpation; Trustor's Indemnity.**

5.13.1 Beneficiary shall not directly or indirectly be liable to Trustor or any other person as a consequence of (i) the exercise of the rights, remedies or powers granted to Beneficiary in this Deed of Trust; (ii) the failure or refusal of Beneficiary to perform or discharge any obligation or liability of Trustor under any agreement related to the Trust Property or Collateral or under this Deed of Trust; or (iii) any loss sustained by Trustor or any third party resulting from Beneficiary's failure (whether by malfeasance, nonfeasance or refusal to act) to lease the Trust Property after a Default (hereinafter defined) or from any other act or omission (regardless of whether same constitutes negligence) of Beneficiary in managing the Trust Property after a Default, and no such liability shall be asserted against or imposed upon Beneficiary, and all such liability is hereby expressly waived and released by Trustor; provided, however, the foregoing exculpation shall not apply to any acts of willful misconduct by Beneficiary.

5.13.2 TRUSTOR SHALL AND HEREBY DOES INDEMNIFY, DEFEND (WITH COUNSEL REASONABLY APPROVED BY BENEFICIARY) AND HOLD BENEFICIARY HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, JUDGMENTS, SUITS, CAUSES OF ACTION, ADMINISTRATIVE CLAIMS, DAMAGES, PENALTIES, FINES, LIABILITIES, LOSSES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES, CONSULTANT AND EXPERT FEES AND COURT COSTS) THAT ARISE AS A RESULT OF (I) BY REASON OF THIS DEED OF TRUST; (ii) BY REASON OF THE EXECUTION OF THIS DEED OF TRUST OR IN PERFORMANCE OF ANY ACT REQUIRED OR PERMITTED HEREUNDER OR BY LAW; (iii) AS A RESULT OF ANY FAILURE OF TRUSTOR TO PERFORM TRUSTOR'S OBLIGATIONS; OR (iv) BY REASON OF ANY ALLEGED OBLIGATION OR UNDERTAKING ON BENEFICIARY'S PART TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS CONTAINED IN ANY OTHER DOCUMENT RELATED TO THE SUBJECT PROPERTY. THE ABOVE OBLIGATION OF TRUSTOR TO INDEMNIFY AND HOLD HARMLESS TRUSTEE AND BENEFICIARY SHALL SURVIVE THE RELEASE AND CANCELLATION OF THE SECURED OBLIGATIONS AND THE RELEASE AND RECONVEYANCE OR PARTIAL RELEASE AND RECONVEYANCE OF THIS DEED OF TRUST.

**5.14.** **Environmental Matters.**

**5.14.1** **Trustor's Covenants.** Trustor covenants to comply with all Environmental Laws with respect to the Trust Property and the future use and occupancy of the Trust Property. Trustor shall not use, handle, store or dispose of any Regulated Substances in, on, under, at or about the Trust Property except in compliance with all applicable Environmental Laws.

**5.14.2  Trustor's Environmental Indemnity.** Trustor shall and hereby does indemnify, defend (with counsel reasonably approved by Beneficiary) and hold Beneficiary harmless from and against any and all claims, judgments, suits, causes of action, administrative claims, damages, penalties, fines, liabilities, losses and expenses (including, without limitation, investigation and clean-up costs, attorneys' fees, consultant fees and court costs) that arise as a result of the breach of any of the obligations and covenants set forth above, and/or any presence, spill, discharge, release, threatened release, cleanup or contamination of or by any Regulated Substance in, on, at, under, about or from the Trust Property.

**5.14.3  Definitions.** For the purposes of this Deed of Trust: (a) *"Environmental Law"* shall mean any federal, state or local environmental or health or safety law, regulation or rule, including, without limitation, any judicial or administrative statement of general or specific applicability; and (b) *"Regulated Substance"* shall mean any substance, material or waste regulated by any Environmental Law.

**5.15.  Other Documents.** Trustor shall execute and deliver, in recordable form if requested, such further instruments and do such further acts as may be necessary or desirable or as may be reasonably requested by Trustee or Beneficiary to carry out more effectively the purposes of this Deed of Trust and to subject to the lien created hereby any properties, rights and interests covered or intended to be covered hereby.

**5.16.  Due on Sale, Transfer or Encumbrance.** Trustor will not sell, gives an option to sell, transfer, lease, encumber, convey or in any manner dispose of the Trust Property or any part thereof or interest therein (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument), or alienates in any way all or any portion of the Trust Property without the prior written consent of Beneficiary, which may be given or withheld in Beneficiary's sole discretion. If Trustor is dissolved or if Trustor is a corporation, partnership or limited liability company and the controlling interest of such corporation, partnership or company is sold or transferred, or if Trustor is a trust and there is a change of beneficial interest with respect to the Trust, then Trustor will be deemed to have transferred the Trust Property in violation of this paragraph. In the event of a breach of this covenant, at its option, Beneficiary may declare all sums secured by this Deed of Trust to be immediately due and payable and avail itself of any and all remedies provided herein upon an Event of Default. Beneficiary shall upon request be provided with adequate and complete information concerning the proposed buyer, transferee, lessee, lender and the proposed transaction. If Beneficiary consents to any such transaction or to assumption of the loan secured by this Deed of Trust, unless Beneficiary expressly agrees in writing Trustor shall not be released from any obligations hereunder or under the Note. Consent to any such transaction shall not be deemed to be consent or waiver of the necessity of consent to any other, future or successive transactions.

## ARTICLE 6. DEFAULT PROVISIONS

**6.1  Default.** Any of the following shall be an *"Event of Default"* or a default under this Deed of Trust: (a) Trustor fails to pay on time any monies due and payable under the Note or any

11

other document executed in connection with the Loan secured hereby; (b) Trustor breaches any warranty, covenant or provision hereof or of any other instrument or agreement executed as a part of this transaction; (c) Trustor becomes insolvent or ceases to do business as a going concern; (d) Trustor abandons all or any part of the Trust Property; (e) Trustor voluntarily files any petition or case under any state insolvency law or any Federal Bankruptcy Code; (f) an involuntary petition or case is filed against Trustor under any state insolvency law or any Federal Bankruptcy Code and the petition remains pending for more than 45 days or the court in which such petition is pending approves the bankruptcy filing, or Trustor is adjudicated a bankrupt or becomes a debtor or debtor in possession in any such proceeding; (g) upon the institution of legal proceedings to enforce any Encumbrance upon the Trust Property, or any portion thereof, or if the Trust Property be attached or levied upon by any execution, attachment, tax levy or other writ which is not removed or bonded in a manner acceptable to Beneficiary within 30 days thereof; (h) a receiver, trustee, assignee, conservator, fiscal agent or liquidator be appointed for Trustor or for all or any part of the Trust Property; (i) Trustor breaches its covenants and agreements concerning sale, transfer or encumbrance of the Trust Property; (j) Trustor makes an assignment for the benefit of creditors generally; (k) Trustor fails to timely observe or perform any covenants or conditions in any lease of the Trust Property to be performed by Trustor and such failure is not cured prior to the expiration any applicable notice and cure periods; or (l) a default or *"Event of Default"* occurs under the Note, under any guaranty given in support of the Note, or under any other documents that now or in the future secure the Note.

6.2     **Rights And Remedies.** At any time after Default, Trustor agrees and acknowledges that Beneficiary and Trustee shall each have all the following rights and remedies:

(a)     With or without notice, to declare all Secured Obligations immediately due and payable;

(b)     With or without notice, and without releasing Trustor from any Secured Obligation, and without becoming a mortgagee in possession, to cure any breach or Default of Trustor and, in connection therewith, to enter upon the Trust Property and do such acts and things as Beneficiary or Trustee deem necessary or desirable to protect the security hereof, including, without limitation: (i) to appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Beneficiary or Trustee under this Deed of Trust; (ii) to pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien which, in the sole judgment of either Beneficiary or Trustee, is or may be senior in priority to this Deed of Trust, the judgment of Beneficiary or Trustee being conclusive as between the parties hereto; (iii) to obtain insurance; (iv) to pay any premiums or charges with respect to insurance required to be carried under this Deed of Trust; or (v) to employ counsel, accountants, contractors and other appropriate persons;

(c)     To commence and maintain an action or actions in any court of competent jurisdiction to foreclose this instrument as a mortgage or to obtain specific enforcement of the covenants of Trustor hereunder, and Trustor agrees that such covenants shall be specifically enforceable by injunction or any other appropriate equitable remedy and that for the purposes of any suit brought under this subparagraph, Trustor waives the defense of laches and any applicable statute of limitations;

12

(d)      On *ex parte* notice to the extent required by local rules of court, to apply to a court of competent jurisdiction for, nominate, and obtain appointment of a receiver of the Trust Property as a matter of strict right and without regard to the adequacy of the security for the repayment of the Secured Obligations, the existence of a declaration that the Secured Obligations are immediately due and payable, or the filing of a notice of default, and Trustor hereby consents to such appointment of a receiver and agrees that that all costs and expenses of the receiver or of the receivership, together with the court-authorized fees and costs of such receiver and his counsel, shall be secured by this Deed of Trust;

(e)      To enter upon, possess, manage and operate the Trust Property or any part thereof, to take and possess all documents, books, records, papers and accounts of Trustor or the then owner of the Trust Property, to make, terminate, enforce or modify Leases of the Trust Property upon such terms and conditions as Beneficiary deems proper, to make repairs, alterations and improvements to the Trust Property as necessary, in Trustee's or Beneficiary's sole judgment, to protect or enhance the security hereof;

(f)      To execute a written notice of such Default and of its election to cause the Trust Property to be sold to satisfy the Secured Obligations.  As a condition precedent to any such sale, Trustee shall give and record such notice as the law then requires.  When the minimum period of time required by law after such notice has elapsed, Trustee, without notice to or demand upon Trustor except as required by law, shall sell the Trust Property at the time and place of sale fixed by it in the notice of sale, at one or several sales, either as a whole or in separate parcels and in such manner and order, all as Beneficiary in its sole discretion may determine, at public auction to the highest bidder for cash, in lawful money of the United States, payable at time of sale.  Neither Trustor nor any other person or entity other than Beneficiary shall have the right to direct the order in which the Trust Property is sold. Subject to requirements and limits imposed by law, Trustee may from time to time postpone sale of all or any portion of the Trust Property by public announcement at such time and place of sale. Trustee shall deliver to the purchaser at such sale a deed conveying the Trust Property or portion thereof so sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustee, Trustor or Beneficiary may purchase at the sale;

(g)      To resort to and realize upon the security hereunder and any other security now or later held by Beneficiary concurrently or successively and in one or several consolidated or independent judicial actions or lawfully taken non judicial proceedings, or both, and to apply the proceeds received upon the Secured Obligations all in such order and manner as Trustee and Beneficiary, or either of them, determine in their sole discretion; and

(h)      Upon sale of the Trust Property at any judicial or non-judicial foreclosure, Beneficiary may credit bid (as determined by Beneficiary in its sole and absolute discretion) all or any portion of the Secured Obligations. In determining such credit bid, Beneficiary may, but is not obligated to, take into account all or any of the following: (i) appraisals of the Trust Property as such appraisals may be discounted or adjusted by Beneficiary in its sole and absolute underwriting discretion; (ii) expenses and costs incurred by Beneficiary with respect to the Trust

13

Property prior to foreclosure; (iii) expenses and costs which Beneficiary anticipates will be incurred with respect to the Trust Property after foreclosure, but prior to resale, including, without limitation, costs of structural reports and other due diligence, costs to carry the Trust Property prior to resale, costs of resale (e.g. commissions, attorneys' fees, and taxes), costs of any hazardous materials clean-up and monitoring, costs of deferred maintenance, repair, refurbishment and retrofit, costs of defending or settling litigation affecting the Trust Property, and lost opportunity costs (if any), including the time value of money during any anticipated holding period by Beneficiary; (iv) declining trends in real property values generally and with respect to properties similar to the Trust Property; (v) anticipated discounts upon resale of the Trust Property as a distressed or foreclosed property; (vi) the fact of additional collateral (if any), for the Secured Obligations; and (vii) such other factors or matters that Beneficiary (in its sole and absolute discretion) deems appropriate. In regard to the above, Trustor acknowledges and agrees that: (w) Beneficiary is not required to use any or all of the foregoing factors to determine the amount of its credit bid; (x) this Section does not impose upon Beneficiary any additional obligations that are not imposed by law at the time the credit bid is made; (y) the amount of Beneficiary's credit bid need not have any relation to any loan-to-value ratios specified in the underwriting of the loan secured hereby or previously discussed between Trustor and Beneficiary; and (z) Beneficiary's credit bid may be (at Beneficiary's sole and absolute discretion) higher or lower than any appraised value of the Trust Property.

6.3 **Application Of Foreclosure Sale Proceeds**. After deducting all costs, fees and expenses of Trustee, and of this trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with sale and costs and expenses of sale and of any judicial proceeding wherein such sale may be made, Trustee shall apply all proceeds of any foreclosure sale: (a) to payment of all sums expended by Beneficiary under the terms hereof and not then repaid, with accrued interest at the rate of interest specified in the Note to be applicable on or after maturity or acceleration of the Note; (b) to payment of all other Secured Obligations; and (c) the remainder, if any, to the person or persons legally entitled thereto.

6.4 **Application Of Other Sums**. All sums received by Beneficiary under Section 6.2 or Section 3.2, less all costs and expenses incurred by Beneficiary or any receiver under Section 6.2 or Section 3.2, including, without limitation, attorneys' fees, shall be applied in payment of the Secured Obligations in such order as Beneficiary shall determine in its sole discretion; provided, however, Beneficiary shall have no liability for funds not actually received by Beneficiary.

6.5 **No Cure Or Waiver By Beneficiary**. Neither Beneficiary's nor Trustee's nor any receiver's entry upon and taking possession of all or any part of the Trust Property and Collateral, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise or failure to exercise of any other right or remedy by Beneficiary or Trustee or any receiver shall cure or waive any breach, Default or notice of default under this Deed of Trust, or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and Trustor has cured all other defaults), or impair the status of the security, or prejudice Beneficiary or Trustee in the exercise of any right or remedy, or be construed as an affirmation by Beneficiary of any tenancy,

14

lease or option or a subordination of the lien of or security interests created by this Deed of Trust.

**6.6**   **Payment Of Costs, Expenses And Attorneys' Fees.**  Trustor agrees to pay to Beneficiary immediately and without demand all costs and expenses incurred by Trustee and Beneficiary as set forth in the Loan Agreement and pursuant to Section 6.2 (including, without limitation, court costs and attorneys' fees, whether incurred in litigation or not) with interest from the date of expenditure until said sums have been paid at the rate of interest then applicable to the principal balance of the Note as specified therein.  In addition, Trustor shall pay to Trustee all Trustee's fees hereunder and shall reimburse Trustee for all expenses incurred in the administration of this trust, including, without limitation, any attorneys' fees.

**6.7**   **Power To File Notices And Cure Defaults.**  Trustor hereby irrevocably appoints Beneficiary and its successors and assigns, as its attorney in-fact, which agency is coupled with an interest, (a) to execute and/or record any notices of completion, cessation of labor, or any other notices that Beneficiary deems appropriate to protect Beneficiary's interest, (b) upon the issuance of a deed pursuant to the foreclosure of the lien of this Deed of Trust or the delivery of a deed in lieu of foreclosure, to execute all instruments of assignment or further assurance with respect to the Trust Property and Collateral, Leases and Payments in favor of the grantee of any such deed, as may be necessary or desirable for such purpose, (c) to prepare, execute and file or record financing statements, continuation statements, applications for registration and like papers necessary to create, perfect or preserve Beneficiary's security interests and rights in or to any of the Trust Property and Collateral, and (d) upon the occurrence of an event, act or omission which, with notice or passage of time or both, would constitute a Default, Beneficiary may perform any obligation of Trustor hereunder; provided, however, that: (i) Beneficiary as such attorney in fact shall only be accountable for such funds as are actually received by Beneficiary; and (ii) Beneficiary shall not be liable to Trustor or any other person or entity for any failure to act (whether such failure constitutes negligence) by Beneficiary under this Section.

**6.8**   **Cross-Default.**  In the event Trustor, Trustor's principal(s), or company(ies) affiliated with Trustor obtains any other loan(s) from Beneficiary, any default under any provision of the loan document(s) associated with the new loan(s)—including provisions in any promissory note evidencing a loan; any deed of trust, security agreement or guaranty agreement securing a loan; or any borrower's certificate, loan agreement or loan documentation relating to a loan (collectively, "Cross-Collateralized Loan Documents"); as well as any and all extensions, renewals, modifications, substitutions, replacements, and changes of the Cross-Collateralized Loan Documents—shall constitute a default under the Note, the Deed of Trust, the Cross-Collateralized Loan Documents, and all other agreements between Trustor and Beneficiary.  Any default under the Note or Deed of Trust shall constitute a default under the Cross-Collateralized Loan Documents.

**6.9**   **Cross-Collateral.**  Trustor's default under the Note, the Deed of Trust, the Cross-Collateralized Loan Documents, or any other agreements between Trustor and Beneficiary shall entitle Beneficiary to exercise each and every right available to it under each of the Note, the Deed of Trust, and the Cross-Collateralized Loan Documents, including, but not limited to, the right to foreclose against and sell any collateral, whether real property or personal property,

securing any loan(s). Any and all other loan documents executed by Trustor, Trustor's principal(s), or company(ies) affiliated with Trustor to evidence an obligation owing to Beneficiary before or after the date of this Deed of Trust are subject to and governed by the terms in this paragraph.

## ARTICLE 7. MISCELLANEOUS PROVISIONS

**7.1      Waiver of Jury Trial; No Modification**. Trustor hereby waives trial by jury in any litigation arising out of or in any way related to or connected with the loan secured hereby or this Deed of Trust to the fullest extent permitted by applicable law. At any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary, Trustee may reconvey without warranty any part of the Trust Property, consent to the making of any map or plat thereof, join in granting any easement thereon or in any extension agreement or agreement subordinating the lien or charge hereof. Such actions, and any other modification in the performance of this Deed of Trust shall not affect the priority of this Deed of Trust over any other Encumbrance unless expressly so stated in a writing signed by Beneficiary.

**7.2      Time of Essence**.      Time is of the essence in each and every provision governing the obligations of Trustor hereunder.

**7.3      Acceptance of Late Payments in Sole Discretion**. Acceptance of payment of money after its due date shall be at Beneficiary's sole discretion and shall not constitute any waiver under this Deed of Trust, the Note or Beneficiary's right to require prompt payment of all other sums when due. No extension of time for payment or renewal of Secured Obligations shall affect the lien or priority of this Deed of Trust.

**7.4      Other Collateral.** The taking by Beneficiary of any other collateral for the Secured Obligations hereby shall in no way affect or impair the lien or priority of this Deed of Trust, and Beneficiary may resort for the payment of the Secured Obligations to its several securities in such order and manner as Beneficiary may determine.

**7.5      No Waiver by Beneficiary; Sole Discretion**.      Any forbearance by Beneficiary in exercising any remedy or right hereunder shall not be a waiver of or preclude the subsequent exercise of any such remedy or right and any waiver of rights or remedies by Beneficiary shall be effective only if expressly stated in a writing signed by Beneficiary. Whenever a provision of this Deed of Trust provides for consent by Beneficiary or exercise of Beneficiary's discretion, such consent or discretion shall be given, withheld, exercised, or conditioned by Beneficiary in such manner as Beneficiary elects in its sole and absolute judgment.

**7.6      Notice**. Except for any notice required under applicable law to be given in another manner, (a) any notice to Trustor provided for in this Deed of Trust shall be given by mailing such notice by certified mail, return receipt requested, addressed to Trustor at the above address or at such other address as Trustor may designate by Request for Notice delivered to Beneficiary as provided herein, and (b) any notice to Beneficiary shall be given by certified mail, return receipt requested, to Beneficiary's address stated herein or to such other address as Beneficiary may designate by notice

16

to Trustor as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Trustor or Beneficiary when given in the manner designated herein.

**7.7.    Parties Bound; Suretyship Waivers.** This Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, personal representatives, administrators, executors, successors and assigns. The term *"Beneficiary"* shall mean the owner and holder of the Note secured hereby whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and neuter and conversely and the singular number includes the plural and conversely. The term *"Trustor"* shall mean all persons named as Trustor herein, whether one or more, and Trustor's obligations shall be joint and several. *"Trustee"* shall include all successor trustees. Any Trustor that has signed this Deed of Trust as a surety or accommodation party, or that has subjected its property to this Deed of Trust to secure the debt of another party that is the principal obligor, expressly waives the benefits of (i) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal; (ii) any right of subrogation, any right to enforce any remedy which Beneficiary may have against the principal and any right to participate in, or benefit from, any security for the Promissory Note; (iii) any and all rights and defenses of a surety, including without limitation any rights of reimbursement, indemnification and contribution, which might otherwise be available to a surety under California Civil Code Sections 2787 to 2855, inclusive, 2899 and 3433 or such similar provisions as may be enacted or adopted hereafter.

**7.8    Reconveyance.** Upon payment of the Secured Obligations, Beneficiary shall request Trustee to reconvey the Trust Property and shall deliver proof of payment or satisfaction of the Note and Secured Obligations hereby to Trustee. Trustee shall reconvey the Trust Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation and the release fees of Trustee, if any.

**7.9    Governing Law; Severability.** This Deed of Trust shall be governed by and construed in accordance with the substantive laws of the State of California (without regard to choice of law principles). The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. If any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note that can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable.

**7.10    Integration; Captions.** This instrument, together with the Note and any other contract, instrument or agreement executed by Trustor and/or Beneficiary or any other entity which now or at any time secures the Note, constitutes the entire understanding of the parties, each of whom has been, or has had the opportunity to be, represented by counsel of each party's choosing, and have been bargained for and are negotiated agreements that set forth the entire agreement with respect to the terms thereof, and there are no oral or written statements, representations, agreements or understandings which modify, amend or vary, or purport to modify, amend or vary any of the terms of such documents. All article and section headings and captions in this Deed of Trust are solely for convenient reference purposes and shall not be construed as substantive or interpretive provisions hereof.

17

**7.11.** <u>Execution</u>. This Deed of Trust may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. The partially executed signature page of any counterpart of this Agreement may be attached to any other partially executed counterpart of this Agreement without impairing the legal effect of the signature(s) on such signature page.

**7.12** <u>Authority</u>. The undersigned person or entity signing on behalf of Trustor hereby represents and warrants to Beneficiary that such person/entity has full power and authority to act on behalf of and bind Trustor.

**7.13** <u>Assignment of Loan; Servicing Fees.</u> The Note, or a partial interest in the Note (together with this Deed of Trust) may be sold or assigned one or more times without notice to Borrower. A sale or assignment may result in the change of the person who collects monthly payment due under the Note and this Deed of Trust. Trustor agrees that if the Note is sold or assigned pursuant to this section, Trustor will additionally pay reasonable fees for the non-default servicing of the Note.

**7.14** <u>No Other Agreements</u>. Trustor shall not record or allow to be recorded against the Trust Property any agreements, options or other matters without Beneficiary's prior written consent, which may be given or withheld in Beneficiary's sole discretion. As a condition to any such consent, Beneficiary may require that the parties to any such agreement, option or matter execute and record a subordination agreement in a form acceptable to Beneficiary in its sole and absolute judgment and discretion.

*[Remainder of Page Intentionally Blank. Signatures on Following Page.]*

18

Dated to be effective as of December 1, 2021 (the *"Effective Date"*).

TRUSTOR:

- Ngan Thi Kim Tran, a single woman

By: _____
Ngan Thi Kim Tran

## NOTARY ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA     )
                        ) ss.
COUNTY OF Orange        )

On December 1st, 20 21 before me, Janet Pham _____,
Notary Public, personally appeared Ngan Thi Kim Tran , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JANET PHAM
Notary Public - California
Orange County
Commission # 2241000
My Comm. Expires May 3, 2022

19

Dated to be effective as of December 1, 2021 (the *"Effective Date"*).

TRUSTOR:

Ngoc Tuyet Lam, a single woman

By: _____
Ngoc Tuyet Lam

NOTARY ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA    )
                        ) ss.
COUNTY OF Orange        )

On December 1st, 20 21 before me, Janet Pham _____, Notary Public, personally appeared Ngoc Tuyet Lam , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JANET PHAM
Notary Public - California
Orange County
Commission # 2241000
My Comm. Expires May 3, 2022

Signature _____

1



## EXHIBIT A

## Legal Description of the Real Property

See Exhibit "A" attached hereto and made apart hereof.

# EXHIBIT 'A'

## LEGAL DESCRIPTION

Real property in the **City of Fountain Valley,** County of **Orange,** State of **California,** described as follows:

**LOT 44 OF TRACT NO. 4895, AS PER MAP RECORDED IN BOOK 184, PAGES 5 TO 7 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**EXCEPTING THEREFROM ALL OIL, MINERALS AND HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND BUT WITHOUT THE RIGHT OF ENTRY UPON ANY PORTION OF THE SURFACE OF SAID LAND FOR THE PURPOSE OF EXPLORING FOR, DEVELOPMENT, EXTRACTION OR REMOVAL OF SAID MINERALS OR SUBSTANCES FROM SAID LAND, AS GRANTED TO COAST DEVELOPMENT CO., AND PRACTICAL BUILDERS INC., RECORDED MAY 5, 1964 IN BOOK 7032 PAGE 854, OFFICIAL RECORDS.**

APN: **157-042-01**

EXHIBIT 'A'